COMMONWEALTH of Pennsylvania,
Appellee,

v.

Michael THURMAN, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 1, 2005.

Filed April 7, 2005.

Leigh P. Narducci, Blue Bell, for appellant.

Kevin J. McCloskey, Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: KLEIN, McCAFFERY and BECK, JJ.

OPINION BY KLEIN, J.:

¶ 1 Michael Thurman appeals from the judgment of sentence entered against him in the Court of Common Pleas of Montgomery County on August 6, 2004 after being found guilty of various drug offenses. Specifically, Thurman challenges the trial court's order denying his motion to suppress evidence that was impounded pursuant to an inventory search for Thurman's failure to have valid automobile registration and insurance. After a careful review of the submissions of all parties, relevant law and the official record, we reverse.

¶ 2 Thurman's car was impounded pursuant to a General Order of the Norristown Police Department when he allegedly did not have proper papers. This is improper for two reasons:

(1) While the legislature has an enabling statute permitting a township to allow towing for failure to have proper registration, there is no right in a police department to carry out the towing on its own through a General

Order absent an enabling *ordinance*. It appears there is no such ordinance in Norristown. There is no general power for a police department to just seize a car, and none of the conditions where seizure is proper are present in this case.

(2) Even were such an ordinance enacted, the enabling statute provides for a twenty-four hour period before the vehicle can be towed, and none of the safeguards found in the enabling statute were followed in this case.

¶ 3 Therefore, since the seizure was improper, the inventory search was improper, and the motion to suppress the search should have been granted. A full discussion follows.

*Facts*

¶ 4 Thurman's car was impounded immediately at the time of the alleged failure to have proper papers pursuant to a General Order of the Norristown Police Department. At about 8:30 on the night of November 8, 2003, Sergeant Greenaway of the Norristown Police Department spotted a parked vehicle that had an expired inspection sticker. The inspection sticker expired more than 30 days earlier. The sergeant issued a non-moving violation. Later, Sgt. Greenaway saw Thurman get into the car and drive away. Sgt. Greenaway contacted fellow officer Kenneth Lawless, who was operating a patrol car, and asked him to stop Thurman for violating 75 Pa.C.S. § 4703(a) (vehicles not to be operated without official inspection).

¶ 5 Officer Lawless stopped Thurman, also noticing that one of the vehicle's brake lights was not functioning, thereby violating 75 Pa.C.S. § 4303(b). During the traffic stop, Officer Lawless determined, through the Pennsylvania Department of Transportation (PennDOT) computer system, that Thurman's registration had been suspended due to insurance cancellation.[1]

¶ 6 Pursuant to Norristown Police Department General Order 2000–23, Officer Lawless impounded Thurman's vehicle and had it towed. Prior to towing, Officer Lawless allowed Thurman to take whatever personal property he wanted from the car. Also prior to towing, and pursuant to General Order 2000–23, Officer Lawless conducted an inventory search of the car at which time he discovered one plastic baggie of marijuana and three plastic baggies of cocaine. As his car was being searched, Thurman started to run away. Thurman was apprehended and arrested on drug charges.

¶ 7 There is no question of impropriety in the initial traffic stop. If the order to tow the vehicle was proper, then the inventory search is allowable. What is at question in this case is whether the Norristown Police had the proper authority to tow Thurman's car.

## 1. Lack of authority for impounding the car.

¶ 8 The Commonwealth argues, and the trial court agrees, that General Order

1. At the suppression hearing, Thurman introduced a letter from his insurer indicating that *his insurance was going to be cancelled on* November 15, 2003, for non-payment. This would mean that his insurance was still valid and his registration could not have been legitimately invalidated. However, this letter only mentions an insurance policy number and does not reference a specific car, therefore there was no conclusive evidence presented regarding the state of insurance on the specific vehicle Thurman was operating on November 8. The letter from the insurer may have referenced a policy issued on another car. We have no way of knowing, one way or another. While this issue is not dispositive of the matter, we mention it because of the possible problem indicated if an insurer is notifying the Commonwealth of cancellations before the cancellation is in effect.

2000–23 represents proper legal authority in that the police are allowed to impound a vehicle in "circumstances that involve the community care-taking functions of the police, such as public safety concerns and traffic control concerns." *Commonwealth v. Smith*, 808 A.2d 215, 224 (Pa.Super.2002). These concerns are further embodied in 75 Pa.C.S. § 3352 which sets forth allowable circumstances whereby a vehicle may be towed.

■ ¶ 9 Thurman argues that section 3352 does not provide authority to tow a vehicle for non-registration or for failure to have insurance, and, failing legitimate legislative authority, either from the Commonwealth or an ordinance duly enacted by the Borough of Norristown, the police may not simply tow a vehicle because they have issued a written order saying they can. We agree.

¶ 10 Pennsylvania statutes grant the police authority to remove a vehicle to a "place of safety" if that vehicle is unattended and illegally standing on a roadway in such a manner as to interfere unduly with the normal movement of traffic or if it constitutes a safety hazard. *See* 75 Pa. C.S. § 3352(b). Section 3352 is found in Subchapter E (Stopping, Standing and Parking) of the General Rules of The Road. While case law cited by the Commonwealth and the trial court indicates there is a concurrent "community care-taking function of the police" that allows a certain latitude in determining when the police may tow a vehicle, a fair reading of the relevant portion of the statute indicates that section 3352 is aimed at those vehicles which have been left on the roadways in such a manner as to impede traffic or cause a legitimate safety concern.[2] We can find no authority for the proposition that this section was intended to be bootstrapped onto those sections of the Vehicle Code regarding registration, insurance or other moving traffic violations.

¶ 11 This limitation on the interpretation of section 3352 is especially apparent when one realizes that the issue of towing unregistered and/or uninsured vehicles is specifically addressed at 75 Pa.C.S. § 6309.2 (Immobilization, towing and storage of vehicle for driving without operating privileges or registration).

■ ¶ 12 The Commonwealth has claimed that General Order 2000–23, issued by the Norristown Police Department, sets forth a mandatory policy of towing a vehicle for certain listed offenses, including failure to have valid registration and being more than 30 days overdue for inspection. This argument must fail.

¶ 13 In enacting 75 Pa.C.S. § 6309.2 the legislature required all areas of the Commonwealth, other than Philadelphia, to adopt the section by local ordinance.[3] *See* Historical and Statutory Notes, 1996 Legislation. Thus, towing a vehicle for failure to have proper registration in the Borough

---

2. The trial court made no finding as to whether Thurman's car posed an actual safety hazard or impeded traffic. Regarding safety, the trial court referenced the general notion of public safety in removing uninsured vehicles from the streets. One officer testified Thurman's car was stopped next to the curb, the other that it was stopped more than a car width from the curb.

3. The Commonwealth has presented no evidence that Norristown has ever enacted an ordinance adopting section 6309.2. Our own research on this matter is inconclusive. The current volume containing Borough of Norristown General Laws indicates that at the time of publication, Chapter 305, Vehicles and Traffic, was not published due to the fact the Borough was considering extensive revisions of the ordinance. The Borough of Norristown website, where we presume such information might otherwise be found, is at the time of this writing under construction and therefore unavailable.

of Norristown can be accomplished only by ordinance and not by general order of the police department.

## 2. The protections provided under the enabling act.

¶ 14 Even were the police department allowed to issue a General Order regarding towing, it did not have the authority to issue *this* order. The Borough of Norristown Home Rule Charter grants Norristown the right to exercise "all powers and perform any function not denied by the Constitution of Pennsylvania, the General Assembly of Pennsylvania or this Charter..." *See* Home Rule Charter, Article II, § 41.2–201. There is no question that the General Assembly has granted local governments the authority to remove any abandoned or junked automobiles. *See* 53 P.S. § 46202(5). The vehicle in question here, however, was neither abandoned nor junked.

¶ 15 While there is no specific grant of power to Norristown to tow an unregistered vehicle, section 46202 does not specifically deny that power either. However, the Legislature has placed specific statutory limitations on municipal powers. A municipality has no right to exercise any power contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth. *See* 53 Pa.C.S. § 2962(c)(2). Section 6309.2 is applicable throughout the Commonwealth. Thus, Norristown cannot enact either a local ordinance or issue a general order that limits the terms of the generally applicable § 6309.2, specifically, Norristown has no authority to withdraw or alter any of the various due process provisions provided by the legislature in section 6309.2 but which are not found in the General Order.

¶ 16 Finally, we note that under 53 Pa. C.S. § 2962(e), any uniform statute applicable in every part of the Commonwealth shall supersede any municipal ordinance or resolution on the same issue.[4] Therefore, even if General Order 2000–23 has been properly adopted in every other way,[5] it would still be unenforceable as section 6309.2 specifically addresses the same subject and therefore supersedes the general order. Section 6309.2 does not allow impounding and towing in the manner in which it was done in this circumstance.

¶ 17 Under the provisions of section 6309.2 there is a multi-step process available to the authorities to tow a vehicle that is not validly registered. First, the loss of operating privileges, lack of valid registration or failure to maintain financial responsibility (and concurrent lack of registration) must be verified by an appropriate law enforcement officer. 75 Pa.C.S § 6309.2(a)(1,2). Then, the law enforcement officer shall immobilize the vehicle. *Id.* Once the vehicle has been immobilized, an appropriate judicial authority (Traffic Court in Philadelphia or the appropriate district justice in any other community) is to be notified. *Id.* The operator of the vehicle then has 24 hours to appear before the appropriate judicial authority to produce the required documentation, such as proof of financial responsibility and registration or a valid driver's license. 75 Pa.C.S. § 6309.2(b). If such documentation is forthcoming, the judicial authority may issue a certificate of release. *Id.* If, however, a certificate of release is

---

**4.** Although section 6309.2 is not mandatory (not every municipality is required to tow improperly registered vehicles) the statute is nonetheless applicable throughout the Commonwealth. There is nothing in the statute that specifically limits the applicability of the provisions.

**5.** And assuming that section 6309.2 was properly adopted by local ordinance.

not obtained within 24 hours from the time of immobilization, then the vehicle shall be towed. 75 Pa.C.S. § 6309.2(b)(3). In order to tow the car, the judicial authority informs the appropriate law enforcement officer at which time the law enforcement officer notifies the appropriate towing agency and the car is removed. 75 Pa.C.S. § 6309(c).

¶ 18 Thus the statutory authority to tow a vehicle that is not properly registered contains a 24 hour grace period that allows the vehicle operator (or owner) to demonstrate that the vehicle is indeed properly registered, insured or that the operator is properly licensed. This appears to be an important element of the law which satisfies due process and prevents the Commonwealth from improperly confiscating a person's property. The import of this grace period is demonstrated by the facts presented in the instant case.

¶ 19 Thurman claims that PennDOT, or someone, improperly listed him as having cancelled insurance and revoked registration. Had Thurman produced the letter from his insurance carrier indicating his insurance would not be cancelled until November 15 and produced a declarations page indicating the car he was operating was the car covered by the policy referred to in that letter, the judicial authority may very well have issued a certificate of release. The car would never have been towed and no inventory search would have taken place.

¶ 20 Having demonstrated the car was not towed in accordance with statutory provisions, we briefly return to section 3352 of the Vehicle Code. Both the trial court and the Commonwealth have claimed that section 3352 encompasses the "community care-taking functions" of the police that properly allowed the police to tow and search the vehicle. This notion was voiced by our Court in Commonwealth v. Henni-

gan, 753 A.2d 245 (Pa.Super.2000). Hennigan, in turn, took the concept from the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In Opperman, the U.S. Supreme Court found no constitutional violation in conducting an inventory search of a vehicle that had been lawfully impounded. Opperman had left his car overnight in a no parking/tow away zone. The car had been ticketed twice before it was towed. Once in the impound lot, the police saw numerous personal effects in the car and thereafter conducted an inventory search that turned up drugs. Significantly, the police action was premised on the fact that the car had been lawfully impounded. Opperman had violated local law by leaving his car in a tow away zone. Opperman does not stand for the proposition that the police may simply impound a car and search it. The police may only lawfully impound a car.

¶ 21 In Hennigan, our Court actually suppressed the fruits of the search after determining the vehicle had been improperly impounded. The car was legally parked and the police showed no nexus between the car and the crime for which Hennigan was arrested (drug dealing). Further, there was no demonstration that the interests of public safety and efficient traffic movement were implicated. 753 A.2d at 259. Thus, the gun seized from the car was suppressed.

¶ 22 Our Court stated,

The Commonwealth argues (and the trial court concluded) that impoundment of the vehicle is proper if the vehicle is impounded solely for the protection of Appellant's personal property. While it may be true that an arrestee's vehicle may be exposed to danger if it is left legally parked on the public street in a high-crime area, this concern, standing alone, is inadequate to override the rea-

sonable expectations of privacy enjoyed by our citizens, defendants and non-defendants alike.

*Id.* at 259–60.

¶ 23 As there was no finding that the care-taking functions were implicated, the rationale of *Hennigan* and *Opperman,* as embodied in section 3552 cannot apply. Even if we were to read *Hennigan* and *Opperman* so broadly as to indicate there are no inherent constitutional prohibitions in the impoundment and search of vehicles, the general notion that an action may be constitutional does not override the specific statutory requirements found in section 6309.2.[6] Thus the community care-taking functions of the police do not trump the statutory limitations and requirements for towing a vehicle that is not properly registered.

¶ 24 In light of the foregoing, we reverse the trial court's determination that the vehicle was properly impounded and searched. As such, the fruits of that search, the baggies of drugs, were improperly admitted into evidence.

¶ 25 Judgment of sentence reversed. Matter remanded for a new trial. Jurisdiction relinquished.

---

6. That a state action may, in come circumstances, be constitutional does not mean that the government may ignore self-imposed statutory limitations on an action. In an extreme hypothetical, the imposition of the death penalty is, under certain circumstances, constitutional. If a particular state does not authorize the death penalty, no local government within that state may impose and carry out a death sentence by simply claiming the execution was not unconstitutional.