**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**William THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 1, 2010.
Filed July 16, 2010.

Karl Baker, Public Defender, Philadel-
phia, for appellant.

Hugh J. Burns, Jr., Assistant District
Attorney, Philadelphia, Commonwealth,
appellee.

BEFORE: OTT, J., McEWEN, P.J.E., AND CLELAND *, J.

OPINION BY CLELAND, J.

¶ 1 Appellant, William Thompson (Thompson), appeals the order of the Court of Common Pleas of Philadelphia County entered on May 29, 2009 denying Thompson's Writ of *Certiorari* wherein he argued the Municipal Court of Philadelphia erred in failing to suppress evidence against him. Specifically, Thompson argues the police did not have the authority to conduct an inventory search of an immobilized vehicle. We disagree and affirm.

¶ 2 The Court of Common Pleas summarized the facts of the case as follows:

During the hearing on [Thompson]'s Motion to Suppress, Officer Christopher Sanford testified that on March 24, 2008, at approximately 9:50 pm., his tour of duty took him to the 7200 block of Hawthorne Street. Officer Sanford was on a routine patrol and observed a crowd of 20 or more young people crowded around a black Ford SUV parked in front of St. [Matthew], a Catholic school located at the intersection of Cottman and Hawthorne streets. The car was legally parked, with the engine running, and loud music was playing over the radio.

Officer Sanford testified that he decided to investigate the situation in order to determine the driver's purpose with respect to the group of young people because he was "old enough to not be part of the crowd." Officer Sanford approached the man sitting in the driver's

seat [ (Thompson) ] and requested to see his license and registration. There was no one else in the vehicle. [Thompson] gave the officer his name, date of birth, and an I.D. card. Two license numbers were found to correspond to the name on that I.D.: one operator was deceased and the other had his license suspended. Officer Sanford informed [Thompson] that because his license was suspended, the car would be impounded under the "Live Stop" rule.[1]

As required by procedure, Officer Sanford issued a ticket and completed some paperwork while Officer Joseph Mulligan conducted a custodial inventory of the car's content in preparation for having the car towed. As stipulated at trial, during the process of making that custodial inventory, Officer Mulligan recovered 10 small bags containing a "green weed substance" from inside a hat lying on the front passenger seat of the vehicle.

Testifying for the defense … Ms. Larissa Anozdekon said she owned the vehicle in which [Thompson] was questioned, the vehicle had run out of gas while she was giving [Thompson] a ride home that night, and she had left the vehicle with him while she and a friend went to purchase more gasoline. [Thompson] confirmed the vehicle was owned by "Miss Larissa" and said he explained this to the police when they first questioned him.

Court of Common Pleas Opinion, 8/5/09, at 2–3 (citations omitted).

---

* Retired Senior Judge assigned to the Superior Court.

1. The City of Philadelphia's "Live Stop" program involves the immediate immobilization in place or towing at a different location of "vehicles found to be operat[ed] in violation of certain state motor vehicle statutes." *Philadelphia Parking Authority v. American Federation of State, County, Municipal Employees, District Council 33, Local 1637, 845 A.2d 245, 246 (Pa.Cmwlth.2004).*

¶ 3 The Court of Common Pleas summarized the procedural history of the case as follow:

On March 24, 2008, [Thompson] was arrested and subsequently charged with Possession of Marijuana. On October 6, 2008, [Thompson] brought a Motion to Suppress physical evidence before the Honorable Ronald B. Merriweather [of the Philadelphia Municipal Court]. After hearing the evidence presented, Judge Merriweather denied the Motion to Suppress. On April 6, 2009, [Thompson]'s case proceeded to trial [before the Municipal Court] where he was found guilty. The Honorable Thomas Gehret [of the Philadelphia Municipal Court] sentenced him to no further penalty. [Thompson] subsequently filed a Petition for Writ of Certiorari, and a hearing was held before [the Court of Common Pleas] on April 30, 2009, wherein the [court] reviewed the [Municipal Court]'s decision denying [Thompson]'s Motion to Suppress. On May 29, 2009, the Petition for Writ of Certiorari was denied. On June 4, 2009, [Thompson] filed this timely appeal of the [Court of Common Pleas'] decision.

On June 11, 2009, [the Court of Common Pleas] ordered [Thompson], pursuant to Pa.R.A.P. 1925(b) (2009) to file a concise statement of the matters complained of

on appeal. [Thompson] subsequently filed the necessary 1925(b) statement on June 29, 2009.[2]

*Id.* at 1–2.

¶ 4 Thompson raises one question for our review:

Did not the court err by failing to suppress the physical evidence seized in an inventory search that was illegal under the state and federal constitutions and 75 Pa.C.S. § 6309.2, which does not permit police to direct the towing of a vehicle in Philadelphia in the absence of any threat to public safety and convenience for 24 hours from the time the vehicle was immobilized?

Appellant's Brief at 2.

¶ 5 Thompson argues none of the statutory scenarios authorizing the removal of a vehicle by or at direction of the police have been met in this case. As such, Thompson argues, the inventory search conducted by the police following an unauthorized removal of the vehicle was illegal. As a result, the evidence discovered in the vehicle should be suppressed.

¶ 6 Specifically, Thompson argues the vehicle involved in the search was legally parked and did not pose a hazard to public safety, as such, pursuant to 75 Pa.C.S.A. § 6309.2(a)(1), it could not have been immediately towed.[3]

---

**2.** The Court of Common Pleas ordered Thompson to file a "concise statement of the matters complained of on appeal" within 14 days of the entry of the order (6/11/09). Although the lower court cites in its opinion Rule "1925(b) (2009)," the court is in fact relying on Rule 1925 as in force before the 2007 amendments. As a result of the 2007 amendments (applicable here), a defendant, if so ordered, must file a "concise statement of the *errors* complained of on appeal. ('Statement')." Pa.R.A.P. 1925(b)(1) (emphasis added). Most importantly, pursuant to the amendment, "the judge *shall* allow the appellant *at least 21 days* from the date of the order's entry on the docket for the filing and

service of the Statement." Pa.R.A.P. 1925(b)(2) (emphasis added). Here, Thompson filed his Statement on June 29, 2009, which is within the 21 days of the order but beyond the 14–day period set by the court. Because the court set a term shorter than what the rule mandates and considering Thompson filed his Statement within 21 days of the order, his Statement is timely.

**3.** There is no dispute section 6309.2 is applicable. Section 6309.2, as amended throughout the years, is applicable to Philadelphia, the only city of the first class in the Commonwealth of Pennsylvania. *See Commonwealth v. Henley*, 909 A.2d 352, 362 (Pa.Super.2006)

¶ 7 Thompson also argues the vehicle could not be immediately towed for another reason: pursuant to section 6309.2(b)(1) and (b)(3), if the vehicle cannot be immediately towed under 75 Pa.C.S.A. § 6309.2(a)(1), the vehicle can only be immobilized in place.[4] The immobilization lasts 24 hours. The vehicle can be towed only if the operator is unable to obtain a certificate of release within the 24–hour immobilization period. Here, according to Thompson, because the 24–hour period had not expired yet, the vehicle could not be towed. Given the vehicle could not have been towed, the police could not conduct an inventory search.

¶ 8 Thompson, therefore, essentially alleges: (i) only the actual towing of a vehicle may trigger an inventory search and (ii) the 24–hour immobilization period operates to preclude inventory searches by the police. We disagree.

¶ 9 While Thompson artfully focuses his analysis on the mechanics of towing and its interaction with immobilization, he does not address the real issue in this matter: whether the police officers could conduct an inventory search of an immobilized vehicle. As explained in this opinion, we conclude they can.

¶ 10 In addressing this issue, we are guided by the following principles:

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super.2002) (en banc) (citations and quotation marks omitted).

¶ 11 In determining whether the police had the authority to conduct an inventory search, this Court stated:

In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, *i.e.,* have lawful custody of the automobile.... The second inquiry is whether the police have conducted a reasonable inventory search.

*Henley*, 909 A.2d at 359 (citations omitted).

¶ 12 Regarding the first requirement, in *Henley* this Court noted "[t]he authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety." *Id.* (citations omitted).

¶ 13 The police's authority to take custody of a vehicle, however, also derives from section 6309.2,[5] which in relevant part provides as follows:

---

(*en banc* ) (citing the Historical and Statutory Notes following section 6309.2). *See also* Appellant's Brief at 12.

**4.** As also explained below, Thompson does not contend the police did not have the authority to immobilize the vehicle. Instead Thompson argues the police, under the circumstances, did not have the authority to tow the vehicle before the expiration of the 24–hour immobilization period.

**5.** *See Henley*, 909 A.2d at 364 (holding that section 6309.2 coexists with "the traditional

**(a) General rule.**—Subject to subsection (d), the following shall apply:

(1) If a person operates a motor vehicle or combination on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

. . . .

**(b) Procedure upon immobilization.**—
(1) When a vehicle is immobilized pursuant to subsection (a)(1), the operator of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:

(i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and

(ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 (relating to judiciary and judicial procedure) and this title.

. . . .

(3) If a certification of release is not obtained within 24 hours from the time the vehicle was immobilized, the vehicle shall be towed and stored by the appropriate towing and storage agent under subsection (c).

community care-taking functions of the po-

. . . .

75 Pa.C.S.A. § 6309.2.

¶ 14 Therefore, pursuant to section 6309.2(a)(1), an officer who stops a vehicle operated by a person whose driving privilege is, *inter alia,* suspended, is faced with two options: immobilize the vehicle in place or, if it poses public safety concerns, have it towed and stored at an impound lot. Once the vehicle is immobilized or impounded under section 6309.2, the vehicle is in the lawful custody of the police.

¶ 15 The relevant requirements for purposes of immobilization are: (i) the person operates a motor vehicle while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, and (ii) the vehicle does not pose public safety concerns.

¶ 16 For purposes of towing, the requirements are: (i) the person operates a motor vehicle while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department and (ii) the vehicle poses public safety concerns warranting its towing and storage at an impound lot.

¶ 17 Thompson argues the vehicle did not pose public safety concerns and therefore the vehicle could not be towed, but only immobilized. Thompson, in fact, argues the police had no authority to tow the vehicle but does not argue the police did not have sufficient grounds for immobilizing the vehicle.

¶ 18 We first note any discussion regarding whether the requirements for tow-

lice.")

ing the vehicle have been met here is unnecessary because all agree the police searched the vehicle before being towed, *i.e.*, while immobilized.

¶ 19 Second, as also noted above, the inquiry for purposes of an inventory search is whether the vehicle was in the lawful custody of the police not whether the police lawfully towed the vehicle. A vehicle is in the lawful custody of the police as soon as the vehicle has been lawfully immobilized. Here, as noted, Thomson does not contend the vehicle was unlawfully immobilized. As such, we conclude the first prong of the inventory search test (*i.e.*, whether the police lawfully took custody of a vehicle) is met.[6] *See Henley,* 909 A.2d at 359.

¶ 20 Regarding the second requirement (*i.e.*, reasonableness of search) in *Henley* this Court noted "[a]n inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." *Henley,* 909 A.2d. at 359 (citation omitted).

¶ 21 Thompson does not dispute the officers acted in conformity with standard police procedure or that the procedure is unreasonable or that the "motive" of the search was investigatory as opposed to inventory. Appellant's Brief at 11 n. 2. ("Appellant does not challenge the reasonableness of the standard police procedures

or the officer's motivations in searching the vehicle."). Accordingly, we conclude the second requirement is also met here. Because the police took the vehicle into police custody in accordance with the statute and there is no dispute the inventory search was reasonable, we conclude Thompson's claim the inventory search of the vehicle is illegal fails.

¶ 22 Next, Thompson relies on *Commonwealth v. Thurman,* 872 A.2d 838, 840–42 (Pa.Super.2005) and *Henley,* 909 A.2d. at 362, for the proposition that "following the procedures laid out [in section 6309.2] is necessary to effect a legal towing and impoundment and concomitantly a legal inventory search pursuant thereto." Appellant's Brief at 12. Thompson's reliance on *Thurman* and *Henley* is misplaced.

¶ 23 First, neither *Thurman* nor *Henley* applied section 6309.2, although both decisions contain ample discussions concerning that section. In *Thurman* a panel of our Court found section 6309.2 was inapplicable because the municipality (Borough of Norristown) did not adopt section 6309.2 by local ordinance. In *Henley* we held the authority of local governments to impound and tow vehicles may derive from Section 6309.2 as well from their community care taking function. In *Henley* we concluded the City of Pittsburgh, although it did not adopt by ordinance section 6309.2, had the authority to impound unregistered/uninsured vehicles pursuant to the Pittsburgh

---

**6.** Regardless of whether Thompson actually raised a challenge, the police lawfully immobilized the vehicle. The suppression court essentially found Thompson was the operator of the vehicle and his driving privilege was suspended while operating the vehicle. Specifically, the suppression court found Officer Sanford's testimony "more credible." N.T. Suppression Hearing, 10/06/08, at 23. Officer Sanford testified Thompson was in the driver's seat of the vehicle when he approached the vehicle. *Id.* at 6. Thompson was the only person in the vehicle. *Id.* at 8.

The vehicle was parked, although the engine was running. *Id.* at 6, 9–10. Upon checking Thompson's information, the officer concluded Thompson's license was suspended. *Id.* at 7. Accordingly, Officer Sanford "Live Stopped" the vehicle. *Id.*

The suppression court concluded these facts gave the police sufficient ground to take custody of the vehicle pursuant to the Live Stop program. Upon review, we agree with the suppression court's conclusion the police lawfully took custody of the vehicle. *See* 75 Pa. C.S.A. § 6309.2(a)(1).

Police impoundment and inventory procedure.

¶ 24 Second, the validity of *Thurman* after *Henley* appears questionable. In *Henley,* this Court, sitting *en banc,* clearly disapproved *Thurman's* analysis of section 6309.2 and declined to apply it. *Henley,* 909 A.2d at 360, 362.

¶ 25 Finally, Thompson relying on *Commonwealth v. Germann,* 423 Pa.Super. 393, 621 A.2d 589 (1993), argues that since his vehicle did not pose public safety issues, there was no need for a full scale search of the vehicle. Specifically, Thompson argues this Court in *Germann* adopted the reasoning of *United States v. Abbott,* 584 F.Supp. 442 (W.D.Pa.1984), *aff'd,* 749 F.2d 28 (3d Cir.1984), which in relevant part provides as follows:

> Logically, since an inventory search is to protect the owner's property, the owner, whenever available, should be given the opportunity to determine how he wants his property secured. The Supreme Court has implicitly embraced this view: that it should be only in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner of the property may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment.... [I]t is only reasonable that the owner be allowed to choose whether or not he wishes his car impounded.

*Abbott,* 584 F.Supp. at 448–49 (citing *United States v. Lawson,* 487 F.2d 468, 477 (8th Cir.1973)) (alteration in original).

¶ 26 However, this case is distinguishable from *Germann.* First, *Germann* involved the inventory search of a vehicle for which the requirements of 75 Pa.C.S.A. § 3352 (relating to removal of vehicle by or at direction of police) were not met. Here, we are dealing with a case of an inventory search of a vehicle lawfully immobilized under section 6309.2.

¶ 27 Second, Thompson, as opposed to appellant in *Germann,* was not "available to provide for the custody and removal of the vehicle," *Germann,* 621 A.2d at 594, because his operating privilege was suspended.

¶ 28 Third, in *Germann,* this Court emphasized the inquiry into the police's motive because "motive" is "the sole factor which distinguishes a criminal investigatory search from a noncriminal inventory search of an automobile." *Id.* at 595. In *Germann,* considering the facts and the circumstances surrounding the search, we concluded the search was motivated by an improper motive (was indeed an investigatory search and therefore not "excepted from the warrant requirement or probable cause."). *Id.* at 594. Here, as opposed to *Germann,* it is undisputed the police had proper motives for searching the vehicle. Appellant's Brief at 11 n. 2. The concerns raised in *Germann/Abbott* are simply not present here.

¶ 29 The above facts, on the other hand, sufficiently justify the inventory search of the vehicle in this case. As this Court noted in *Henley,*

> Inventory searches serve one or more of the following purposes: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned.

*Henley,* 909 A.2d at 359 (citing *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)).

¶ 30 Here, the owner of the vehicle was not present when the police immobilized the vehicle and there was no one authorized by the owner who could physically or legally take control of the vehicle. N.T.

Suppression Hearing, 10/06/08, at 8. As such, we see at the very least two purposes for the police to conduct an inventory search of the vehicle in this case: (1) "to protect the owner's property while the vehicle was in police custody;" and (2) "to protect the police against claims or disputes over lost or stolen property." *Henley, supra.*

¶ 31 We hold, therefore, the concerns justifying an inventory search of a vehicle when the vehicle is towed and stored in an impound lot are equally present when the vehicle is immobilized in place. Thus, once the police have taken lawful custody of a vehicle under section 6309.2, whether the vehicle has been immobilized or towed is irrelevant for purposes of the inventory search analysis. Additionally, the procedures set forth for the release of the vehicle upon immobilization have no bearing on the issue whether the police can conduct an inventory search of the vehicle.[7]

¶ 32 In light of the foregoing, we conclude the police lawfully immobilized the vehicle and conducted a reasonable inventory search of the same.

¶ 33 Order affirmed.

---

**7.** The suppression court concluded the police lawfully searched the vehicle while preparations were made for its towing because "[Thompson] was seated in a running vehicle legally parked in front of a school around 10 p.m. on a Monday evening. Although the vehicle did not impede traffic, it was playing loud music and attracted a large crowd of young people. It was possible the crowd would become unruly and the music might disrupt the quiet of the neighborhood." Court of Common Pleas Opinion, 8/5/09, at 6. In the suppression court's opinion, these facts qualified as a "public safety" concern for purposes of towing a vehicle under section 6309.2(a)(1). As noted above, we do not need to address this issue for the vehicle here had been searched before being towed, *i.e.,* while immobilized. Once the police have taken lawful custody of a vehicle, the police may conduct an inventory search of the vehicle if concerns for an inventory search arise. *Henley,* 909 A.2d at 359 (citing *Opperman,* 428 U.S. at 369, 96 S.Ct. 3092). *See also* above discussion in connection with *Germann.* Although we do not fully agree with the lower court's analysis, this Court "will affirm the trial court's decision if the result is correct on any ground, without regard to the grounds on which the trial court relied." *Commonwealth v. Cassidy,* 315 Pa.Super. 429, 462 A.2d 270, 272 (1983).