J-S28043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DWAYNE WRIGHT | : | |
| | : | |
| Appellant | : | No. 1468 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 10, 2019
in the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004113-2018

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 26, 2020**

Dwayne Wright ("Wright") appeals from the judgment of sentence imposed following his conviction of two counts each of firearms not to be carried without a license and possession with intent to deliver controlled substances, and one count each of person not to possess firearms, receiving stolen property, possession of drug paraphernalia, and driving while operating privileges are suspended or revoked.[1] We affirm.

While on patrol on June 12, 2018, Lancaster City Bureau of Police ("LCBP") Officers Jacob Bingham ("Officer Bingham") and Timothy Sinnot ("Officer Sinnot") conducted a traffic stop of a black Ford Focus, driven by

_____

[1] 18 Pa.C.S.A. §§ 6106(a)(1), 6105(a)(1), 3925(a); 35 P.S. § 780-111(a)(30), (32); 75 Pa.C.S.A. § 1543(a).

Wright, with an expired registration. Wright pulled the vehicle to the side of the street, out of the way of traffic. The expired registration revealed that the vehicle was registered to Bruce Dates ("Dates"),[2] at 425 Church Street, Lancaster, Pennsylvania. The officers then made contact with Wright,[3] who provided them with a photo identification, rather than a driver's license. Officer Bingham used the information to search Wright's Pennsylvania Department of Transportation driver's history, which revealed that Wright's driver's license was suspended. Additionally, dispatchers informed the officers that there was an active parole warrant for Wright based on a parole violation. The officers confirmed the existence of the parole warrant, and placed Wright under arrest.

During a search incident to Wright's arrest, the officers searched Wright, and retrieved from his pocket $79 in U.S. currency, bound together by a rubber band. The officers also retrieved $35 in "loose" cash from the same pocket.

While Wright was detained in the police cruiser, Officer Bingham conducted an inventory search of the Ford Focus. Officer Bingham searched the interior of the vehicle, and located a black jacket on the passenger seat.

---

[2] The proof of insurance pertaining to the vehicle was also in Dates's name, and placed in an envelope marked "Keep for Dwayne." *See* N.T. (Bench Trial), 5/8/19, at 16.

[3] Wright was the sole occupant of the vehicle.

In the jacket's front pocket, Officer Bingham found a clear plastic corner-tied bag containing a white powder, which he recognized as cocaine. Based on that finding, the officers decided to obtain a search warrant. While Officer Sinnot transported Wright to the police station, Officer Bingham drove the Ford Focus to the police station and applied for a search warrant for controlled substances.

After the search warrant was issued, Officers Bingham and Sinnot searched the vehicle. The officers found a bag in the trunk of the vehicle, which contained powder cocaine, crack cocaine, and a firearm. The officers left the items in the vehicle, and applied for a separate search warrant for firearms, weapons, and ammunition. While executing the second search warrant, the officers recovered the cocaine (approximately 50 grams total), marijuana and drug paraphernalia, a Kahr Arms 9 mm pistol ("the Kahr Arms pistol"), a Hi-Point .45 caliber pistol, and ammunition for both weapons. Additionally, the officers found approximately $1,579 in U.S. currency, and several receipts identifying Wright.

On September 5, 2018, Wright filed an Omnibus Pre-Trial Motion, including a Motion to Suppress the physical evidence recovered from the vehicle, challenging the legality of the search. The suppression court conducted a hearing, after which it denied Wright's Motion to Suppress.

Following a stipulated bench trial, Wright was convicted of the above-mentioned offenses. The trial court deferred sentencing, and ordered the

preparation of a pre-sentence investigation report.  On July 10, 2019, the trial court sentenced Wright to an aggregate term of 7½ to 20 years in prison, plus costs and a $25 fine.

Wright filed a Notice of Appeal on July 11, 2019,[4] and the trial court directed Wright to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  On July 22, 2019, Wright filed a counseled Post-Sentence Motion, indicating his intention to discontinue the appeal,[5] and challenging the legality of the sentences imposed for his firearms not to be carried without a license convictions.  Specifically, Wright argued that the firearms not to be carried without a license offenses, which were graded as felonies of the third degree, carry a statutory maximum sentence of 7 years; however, the trial court imposed concurrent terms of 5 to 10 years in prison. Wright also acknowledged that modification of these individual sentences would not alter the aggregate sentence, as they were ordered to run concurrently with all other sentences.  On July 29, 2019, the trial court entered

---

[4] On the same date, Wright's trial counsel filed a Motion to Withdraw as Counsel.  From the record, it is unclear whether the trial court ever acted on the Motion to Withdraw.

[5] Wright's counsel did not discontinue the appeal at that time, and failed to perfect the appeal by filing a Pa.R.A.P. 1925(b) concise statement. On August 16, 2019, trial counsel filed a Praecipe to Withdraw Wright's direct appeal on August 16, 2019.  By that time, the time period for filing a direct appeal of the July 10, 2019 judgment of sentence had expired.

an Order modifying the sentences for firearms not to be carried without a license to concurrent terms of 3½ to 7 years in prison.

On September 3, 2019, Wright, through new counsel, filed a Petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), **see** 42 Pa.C.S.A. §§ 9541-9546. Therein, Wright alleged that because trial counsel did not withdraw the July 11, 2019 Notice of Appeal, the Post-Sentence Motion, filed while the appeal was still pending, was a legal nullity. Wright therefore averred that he was denied effective assistance of counsel, and sought reinstatement of his direct appeal rights, *nunc pro tunc*. On the same date, the PCRA court granted Wright's PCRA Petition, restored his direct appeal rights, and directed him to file a notice of appeal within 30 days.

Wright filed a timely Notice of Appeal, *nunc pro tunc*, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Wright raises the following issues for our review:

I. Did the trial court err in denying [] Wright's Motion to Suppress, where [] Wright's vehicle was immobilized but not impounded when police searched it[;] there was no lawful basis to impound the vehicle[;] and the guns and drugs seized were the fruit of the illegal inventory search and subsequent illegally-obtained search warrants[?]

II. Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [] Wright committed the offense of receiving stolen property, where there was no evidence that [] Wright knew that the Kahr Arms [pistol] had been stolen, or that he believed that the firearm had probably been stolen?

Brief for Appellant at 7.

In his first claim, Wright asserts that the suppression court erred in denying his Motion to Suppress, because his vehicle was immobilized, but not impounded, at the time of the search. *Id.* at 19, 22, 31. According to Wright, Officer Bingham acknowledged that he did not have probable cause to believe there was anything illegal in the vehicle. *Id.* at 22. Wright claims that the Commonwealth failed to establish that he was using the vehicle without permission. *Id.* at 24; *see also id.* at 24-25 (arguing that the Commonwealth had reason to believe that Wright was in lawful possession of the vehicle because Wright and the owner lived at the same address). Wright therefore argues that any challenge by the Commonwealth regarding his lawful possession of the vehicle is waived. *Id.* at 25.[6] Additionally, Wright states that some of the court's findings of fact must be corrected: (1) the vehicle's registration was in the name of Bruce Dates, who moved to Alabama; and (2) after arresting Wright, Officer Bingham followed the policies outlined in the LCBP, including an inventory search and securing the vehicle in the garage, until the owner could be contacted. *See id.* at 25-29. Wright also faults the Commonwealth's contention that the physical evidence seized from the vehicle would inevitably have been discovered when the abandoned car was ultimately towed. *Id.* at 30-31.

In reviewing the trial court's denial of Wright's Motion to Suppress,

---

[6] The Commonwealth does not contest Wright's standing to challenge the search on appeal.

our responsibility is to determine whether the record supports the suppression court's factual findings and legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Arnold*, 932 A.2d 143, 145 (Pa. Super. 2007) (citation omitted).

Section 6309.2 of the Motor Vehicle Code provides, in relevant part, as follows:

**§ 6309.2. Immobilization, towing and storage of vehicle for driving without operating privileges or registration**

**(a) General rule.**--Subject to subsection (d), the following shall apply:

(1) If a person operates a motor vehicle … on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer **shall immobilize the vehicle … or, in the interest of public safety, direct that the vehicle be towed and stored** by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

* * *

**(b) Procedure upon immobilization.--**

(1) When a vehicle is immobilized pursuant to subsection (a)(1), the operator of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the

vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:

(i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and

(ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 (relating to judiciary and judicial procedure) and this title.

* * *

(3) If a certification of release is not obtained within 24 hours from the time the vehicle was immobilized, the vehicle shall be towed and stored by the appropriate towing and storage agent under subsection (c).

**(c) Procedure upon towing and storage.--**

(1) Except as provided in paragraph (2), the following steps shall be taken:

(i) The appropriate judicial authority shall notify the appropriate law enforcement officer of the county in which the violation occurred.

(ii) The Officer notified under subparagraph (i) shall notify the appropriate towing and storage agent to tow and store the vehicle … and provide notice by the most expeditious means and by first class mail, proof of service, of the towing, storage and location of the vehicle … to the owner of the vehicle …, if the names and addresses of the owner … are known or can be ascertained by investigation.

* * *

**(d) Recovery of towed and stored vehicle.--**

(1) The owner or lienholder of any vehicle … which has been towed and stored under this section may obtain possession of the vehicle or combination by:

(i) furnishing proof of valid registration and financial responsibility; and

> (ii)(A) if the towing and storage resulted from the operation of the vehicle … by the owner, paying all fines and costs associated with the towing and storage of the vehicle … and any other than outstanding fines and costs of the owner ….

75 Pa.C.S.A. § 6309.2(a)(1), (b)(1), (3), (c)(1), (d)(1) (emphasis added);

*see also Commonwealth v. Lagenella*, 83 A.3d 94, 100 (Pa. 2013)

(concluding that there is no distinction between the terms "impounded" and

"towed and stored" for purposes of section 6309.2).

First, we determine whether the vehicle driven by Wright was immobilized or impounded. Our Supreme Court has previously considered the distinction between immobilizing a vehicle (*i.e.*, restricting movement of the vehicle using a boot or other locking device), and impounding a vehicle:

> [P]ursuant to section 6309.2(a)(1), an officer who stops a vehicle operated by a person whose driving privilege is, *inter alia*, suspended, is faced with two options: immobilize the vehicle in place or, if it poses public safety concerns, have it towed and stored at an impound lot….

> The relevant requirements for purposes of immobilization are: (i) the person operates a motor vehicle while the person's operating privilege is suspended … and (ii) the vehicle does not pose public safety concerns.

> For purposes of towing, the requirements are: (i) the person operates a motor vehicle while the person's operating privilege is suspended … and (ii) the vehicle poses public safety concerns warranting its towing and storage at an impound lot.

*Lagenella*, 83 A.3d at 100 (citing *Commonwealth v. Thompson*, 999 A.2d

616, 620 (Pa. Super. 2010)).

Here, the suppression court determined that the vehicle did not pose a risk to public safety because "[t]he vehicle was likely legally parked, did not have anything of value visible, and was not damaged in any way." Findings of Fact and Conclusions of Law, 2/27/19, at 5 (footnote omitted). During the suppression hearing, Officer Bingham testified that when he effectuated the traffic stop, Wright pulled the vehicle to the side of the road, and positioned it out of the roadway. N.T. (Suppression), 11/15/18, at 21-22; *see also id.* (wherein Officer Bingham stated that he believed the street had metered parking at that location, and he was unsure whether the vehicle was positioned in such a way that would be legal for meter enforcement purposes). Officer Bingham specifically acknowledged that the vehicle did not cause any type of public safety concern. *Id.* at 22. Additionally, Officer Bingham indicated that he did not observe any extensive damage to the vehicle, other than "some scratches, and paint fading," presumably due to its age. *Id.* Officer Bingham testified that there was a vacuum cleaner on the front seat of the vehicle, but otherwise, there was nothing of value in plain view. *Id.* at 23. Further, Officer Bingham testified that, prior to conducting the inventory search, his intent was to immobilize the vehicle. *Id.* at 25-26; *see also id.* at 23 (wherein Officer Bingham stated that the vehicle's expired registration and Wright's suspended driver's license were the only reasons supporting his decision to search the vehicle). We therefore agree with the suppression court's determination, which is supported by the record. Because the vehicle

did not pose a public safety risk, section 6309.2 permitted the vehicle's immobilization, not its impoundment. *See Lagenella*, 83 A.3d at 100; *id.* 101-02 (concluding that the evidence did not support a finding that the vehicle, operated by a defendant with a suspended license, posed a public safety risk, where the vehicle was not disabled or damaged; there were no items of value in plain view; and the parked vehicle did not impede the flow of traffic). *But see Commonwealth v. Peak*, 2020 WL 1501302, at **5-6 (filed Mar. 30, 2020) (concluding that police had authority to tow a vehicle and conduct an inventory search, driven by a defendant with suspended license (and who did not own the vehicle), where the vehicle was parked at a gas station, in front of one of the gas pumps, and its location interfered with the regular course of the gas station's business).

Next, we turn to the legality of the inventory search performed by Officer Bingham while Wright was detained in the police cruiser and the vehicle was at the scene. We first note that Wright does not contest the validity of the initial traffic stop. Rather, Wright challenges the search of the vehicle after it was immobilized. Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. Richter*, 791 A.2d 1181, 1184 (Pa. Super. 2002). Therefore, "[a] warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated exception." *Commonwealth v. Lee*, 972 A.2d 1, 3 (Pa. Super. 2009)

(citation omitted). An inventory search is one such exception to the warrant requirement. *See Lagenella*, 83 A.3d at 102.

> The purpose of an inventory search is not to uncover criminal evidence. Rather, it is designed to safeguard seized items in order to benefit both the police and the defendant. Inventory searches serve one or more of the following purposes: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned.

*Commonwealth v. Hennigan*, 753 A.2d 245, 254-55 (Pa. Super. 2000) (emphasis added; citations and quotation marks omitted).

> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have **lawfully impounded** the automobile, *i.e.*, have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.
>
> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.

*Lagenella*, 83 A.3d at 102-03 (emphasis added; citation omitted). The *Lagenella* Court reviewed the language of section 6309.2, as well as persuasive authority from other jurisdictions, and specifically held that "a vehicle which has simply been immobilized in place is **not** in lawful custody of police for purposes of an inventory search." *Id.* at 104 (emphasis added). Thus, "a warrantless inventory search of a vehicle is permissible only when

the police have lawfully towed and stored, or impounded the vehicle." *Id.* at 106.

Here, after concluding that the vehicle should have been immobilized, the suppression court also concluded that "the vehicle should not have been impounded.  Rather, it should have been immobilized **without an inventory search** at the time of [Wright's] arrest."  Findings of Fact and Conclusions of Law, 2/27/19, at 5 (emphasis added).  We agree.  Because there was no legal basis for Officer Bingham to tow or impound the vehicle immediately upon securing it at the scene, the inventory search was improper, notwithstanding

any contrary standard inventory policy employed by LCPB.[7] **See Lagenella**, 83 A.3d at 104; **id.** at 106 (stating that "because there was no basis for [the officer] to tow [a]ppellant's vehicle in the first instance, the inventory search of [a]ppellant's vehicle was improper….).

Nevertheless, the suppression court concluded that the evidence seized from the vehicle was admissible under the doctrine of inevitable discovery.

---

[7] During the suppression hearing, Officer Bingham testified that his understanding was that in circumstances where a vehicle is operated by an individual with a suspended license, or the vehicle is not legally registered, an officer may either immobilize or tow the vehicle. **See** N.T. (Suppression), 11/15/18, at 11-12. Officer Bingham also stated that LCBP policy requires officers to conduct an inventory search under such circumstances. **See id.** at 12, 25-26. LCBP's Inventory Search Policy provides, in relevant part, as follows:

> .10 <u>Impoundment or Custody of Vehicles.</u>
> Before an inventory search of a vehicle may be done, the vehicle must be legally impounded or lawfully in law enforcement custody. Reasons for the impound or custody must be clearly stated in the [LCBP] Investigative report or on a form provided for such purpose.
>
> > A. A vehicle is **not** considered lawfully in law enforcement custody when we merely park the vehicle and secure it after the driver has been arrested.
>
> .20 <u>Vehicles to be Searched.</u>
> Inventory searches must be conducted on <u>all</u> vehicles impounded or in lawful custody of the Police Department.

Stipulation of Counsel to Correct Record, 10/28/19, Exhibit 3 (LCBP Inventory Search Policy) (emphasis in original). Thus, based upon our review, it appears that LCBP's Inventory Search Policy limits its search requirements to vehicles that are impounded, in accordance with section 6309.2 and the **Lagenella** decision.

*See* Findings of Fact and Conclusions of Law, 2/27/19, at 5-7. The doctrine

of inevitable discovery

> provides that evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, then the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without the police misconduct. Thus, evidence that ultimately or inevitably would have been recovered by lawful means should not be suppressed despite the fact that its actual recovery was accomplished through illegal actions.

*Commonwealth v. Gonzalez*, 979 A.2d 879, 890 (Pa. Super. 2009)

(citations, quotation marks, and brackets omitted).

Recovery of a vehicle, whether it is immobilized or impounded, requires

the owner to produce a valid proof of registration.[8] *See id.* § 6309.2(b)(1)(i),

(d)(1)(i). In the case of immobilization, the operator must produce the

necessary paperwork (*i.e.*, registration and proof of insurance), before an

appropriate judicial authority within 24 hours of the vehicle's immobilization.

*See id.* § 6309.2(b)(1). Here, the record reflects that Dates did not appear

---

[8] We acknowledge that subsection 6309.2(b) concerning immobilization, refers to the "operator of a vehicle," while subsection 6309.2(d), concerning towing and storage, refers to the owner of the vehicle. However, even if Wright were permitted to appear before an appropriate judicial authority as the vehicle's "operator," he would still be unable to produce a valid registration.

- 15 -

before an appropriate judicial authority with the necessary paperwork within 24 hours of the vehicle's immobilization, at which time the police could tow the vehicle, and conduct an inventory search. **See Lagenella**, 83 A.3d at 105 (stating that "only upon the vehicle operator's failure to obtain a certificate of release within 24 hours will the judicial authority notify law enforcement, who, at that time, shall arrange for the towing and storage of the vehicle."), 106 (stating that "a warrantless inventory search of a vehicle is permissible only when the police have lawfully towed and stored, or impounded the vehicle."). Accordingly, we affirm the suppression court's denial of Wright's Motion to Suppress, based on the doctrine of inevitable discovery.

In his second claim, Wright contends that there was insufficient evidence to support his conviction of receiving stolen property. Brief for Appellant at 32. Wright acknowledges that during the stipulated bench trial, his trial counsel stipulated that the elements of the crimes had been met, but argues that the trial court did not adequately colloquy the defendant as to his admission of guilt. **Id.** at 33 n.7. Wright also points out that "[i]t does not appear, however, that the trial court believed that counsel for [] Wright was conceding guilt of all offenses, as he found [] Wright not guilty of driving an unregistered vehicle." **Id.** Additionally, Wright argues that there was no evidence to establish that Wright knew or believed that the Kahr Arms handgun had been stolen. **Id.** at 32. Wright points out that he was in possession of two firearms, only one of which was stolen, and therefore, his

possession of a firearm, without more, is insufficient to establish that he knew or believed the Kahr Arms pistol was stolen. *Id.* at 35.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Furness*, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

Pursuant to section 3925 of the Crimes Code, "[a] person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a). Thus, "[i]n order to convict a defendant of [r]eceiving [s]tolen [p]property, the Commonwealth must establish three elements: (1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably

- 17 -

stolen; and (3) the intent to deprive permanently." ***Commonwealth v.***
***Gomez***, 224 A.3d 1095, 1099 (Pa. Super. 2019) (citation and quotation marks
omitted).

Here, Wright challenges only the second element, *i.e.*, whether he had
knowledge or belief that the Kahr Arms pistol was stolen. "[M]ere possession
of stolen property is insufficient to prove guilty knowledge." ***Commonwealth***
***v. Foreman***, 797 A.2d 1005, 1012 (Pa. Super. 2002). The knowledge
requirement may be established by either direct or circumstantial evidence.
***See id.***; ***see also Commonwealth v. Newton***, 994 A.2d 1127, 1132 (Pa.
Super. 2010) (stating that "[o]ften, intent cannot be proven directly but must
be inferred from examination of the facts and circumstances of the case."
(citation and quotation marks omitted)). "To establish a defendant had guilty
knowledge, … the Commonwealth may introduce evidence that the underlying
theft occurred recently. Such evidence will permit a fact-finder to infer guilty
knowledge, particularly where there is no satisfactory explanation for the
defendant's possession of recently stolen goods." ***Gomez***, 224 A.3d at 1099-
1100 (citations omitted).

> Circumstantial evidence of guilty knowledge may include, *inter*
> *alia*, the place or manner of possession, alterations to the property
> indicative of theft, the defendant's conduct or statements at the
> time of the arrest (including attempts to flee apprehension), a
> false explanation for the possession, the location of the theft in
> comparison to where the defendant gained possession, the value
> of the property compared to the price paid for it, or any other
> evidence connecting the defendant to the crime.

***Commonwealth v. Robinson,*** 128 A.3d 261, 268 (Pa. Super. 2015).

While specifically addressing the receiving stolen property charge, the following exchange occurred between the assistant district attorney and Officer Bingham:

> Q. In addition to the firearms being carried without a license, the Kahr Arms was also charged as receiving stolen property?
>
> A. Correct.
>
> Q. And we would stipulate that Mr. Jeffrey Yunginger -- Yunginger has been subpoenaed by my office and is ready and available for testimony[,] and would testify that his gun indeed was stolen in a burglary, I believe in April of that year?
>
> A. I believe that's the time frame, yes.
>
> Q. And that [] Wright never had his permission or authority to possess that firearm?
>
> A. That is correct.

N.T. (Stipulated Bench Trial), 5/8/19, at 14-15.

After detailing the relevant stipulations for each of the charges, the assistant district attorney stated, "Your Honor, based on the above, my understanding is [defense c]ounsel will be stipulating that the elements of these crimes have been met." *Id.* at 26. The trial court asked Wright's trial counsel to confirm the stipulations, and counsel agreed. *Id.*

In its Opinion, the trial court concluded that there was sufficient evidence to support Wrights receiving stolen property conviction. *See* Trial Court Opinion, 11/4/19, at 4-5 (unnumbered). Regarding the circumstantial evidence supporting its finding of the "guilty knowledge" requirement, the trial court stated that the Kahr Arms pistol had been stolen in a burglary less than

two months prior to the vehicle stop. *Id.* at 5 (unnumbered). Additionally, the trial court points to Wright's criminal history, which triggered the separate conviction of person not to possess firearms (*i.e.*, a prior persons not to possess firearms conviction, and prior felony drug convictions), as circumstantial evidence that Wright did not come into possession of the pistol through legal means. *Id.*

Upon review, we conclude that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support Wright's conviction of receiving stolen property. *See Furness*, *supra*. During the traffic stop, Wright was in possession of a stolen Kahr Arms pistol, which had been the subject of a burglary approximately two months prior. Additionally, the stolen pistol was found in the trunk of the vehicle along with a significant quantity of drugs, and Wright stipulated during the bench trial that the packaging of the drugs, the currency, and other circumstances indicated that he was in possession of controlled substances with intent to deliver them. *See* N.T. (Stipulated Bench Trial), 5/8/19, at 11, 17-18. Thus, the totality of the circumstances permitted the trial court to infer that Wright believed that the Kahr Arms pistol was probably stolen. *See Newton*, 994 A.2d at 1132 (stating that "[w]hen examining the totality of the circumstances to determine if there is sufficient evidence from which a [fact finder] could infer the requisite *mens rea*, we must, as with any sufficiency analysis, examine all record evidence and all reasonable inferences therefrom." (citation and quotation marks omitted)); *see also Gomez*, 224 A.3d at 1100 (concluding that there

was sufficient evidence to infer that the defendant *believed firearms were probably stolen*, where expert testimony established that drug dealers often obtain firearms illicitly, even where there was no evidence that the defendant did, in fact, know that the firearms were stolen). Thus, the evidence, viewed in the light most favorable to the Commonwealth (and particularly in light of the stipulations in this case), was sufficient to sustain Wright's conviction of receiving stolen property.

Judgment of sentence affirmed.

Judge Olson joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2020