386 A.2d 19

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Hazel William BURGWIN, alias Hazel William, alias William Burgwin.**

Superior Court of Pennsylvania.

Argued Nov. 11, 1976.

Decided April 13, 1978.

418

Charles W. Johns and Robert L. Eberhardt, Assistant District Attorneys, and Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellant.

John J. Dean, Assistant Public Defender, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six Judges who heard this appeal being equally divided, the order is affirmed.

CERCONE, J., files an opinion in support of affirmance in which HOFFMAN and SPAETH, JJ., join.

PRICE, J., files an opinion in support of reversal in which JACOBS, President Judge, and VAN der VOORT, J., join.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

OPINION IN SUPPORT OF AFFIRMANCE

CERCONE, Judge:

The facts of this case as summarized by the lower court, are as follows:

"Patrolman Caldwell, a Mt. Lebanon Township police officer, received a radio message on November 11, 1975, indicating that there had been an attempt to cash a stolen check at an area bank. The check passer was described as a black female, afro hairstyle and light colored cap, wearing a dark pantsuit. The suspect allegedly entered a maroon convertible with a dirty top. The officer observed a vehicle, similar to that described in the radio dispatch, occupied by three blacks. The officer stopped the vehicle and as he approached the car he observed one passenger wearing a dark pantsuit, with an afro hairstyle wig and a light colored cap sitting at the passenger's feet.

"The occupants were placed under arrest and were transported to the Mt. Lebanon Police Station. Immediately thereafter, the vehicle was towed at the police station where a vehicle inventory search took place. Patrolman Caldwell testified that the Mt. Lebanon Police Department has a standard procedure to complete a Vehicle

Inventory Sheet whenever a police tow is ordered. This procedure is used in every case where a vehicle is impounded regardless of what charges are made against drivers or passengers, according to the officer. The glove compartment, the seating area and the contents of the trunk are inventoried as a matter of course and the same procedure was employed in the instant case. A search of the trunk revealed a box containing a 12 gauge sawed-off shotgun. Further, unendorsed and blank checks were strewn about the trunk."

The lower court suppressed all evidence which was seized from the vehicle at the Mt. Lebanon Police Station finding that, "the inventory search of the defendant's car was more realistically an investigative search without warrant and consequently violated the defendant's Fourth Amendment rights." We agree.

In *Commonwealth v. Brandt*, 244 Pa.Super. 154, 366 A.2d 1238 (1976) we were faced with the question of whether warrantless inventory searches are *per se* unreasonable, and held that the reasonableness of the search turns on the facts and circumstances of the particular case. We also noted that absent probable cause, a search of an automobile is reasonable provided that the Commonwealth prove that the vehicle was lawfully within the custody of the police and that the search was in fact an inventory search, not an investigative search. *Commonwealth v. Brandt*, 244 Pa.Super. at 162, 366 A.2d at 1242. As to this second element, the mandate of *Brandt* is clearly that:

"The hearing judge must be convinced that the police intrusion into the automobile was for the purpose of taking an inventory of the car and not for the purpose of gathering incriminating evidence." *Id.*

After analyzing the facts and circumstances of the case at bar, the hearing judge concluded that the search of appellee's automobile was an investigative search rather than an inventory search. Initially, we find that a lower court's determination that a purported inventory is in fact an investigative search is better characterized as a conclu-

sion of law rather than a finding of fact. This conclusion, however, is based upon findings of fact and issues of credibility which are determined by the lower court.

In the case at bar, the police officer testified that after arresting appellee and the other occupant of the automobile, "The vehicle was secured. I remained with the vehicle, a tow was ordered to clear Route 19 for the through traffic to get the suspect vehicle off the roadway. The vehicle was towed to the Mt. Lebanon Police Station where a vehicle inventory was fulfilled." The officer also testified that such an inventory is standard procedure which is followed in all cases when an automobile is secured. Notwithstanding this testimony, the lower court was not convinced that the search was an inventory. The circumstances revealed and the lower court found that there was a search of a locked trunk, that appellee and the other occupants of the automobile were in custody and were not asked about disposition of the automobile, nor were they asked whether an inventory was necessary, that the police had indicia sufficient for them to believe that incriminating evidence may well be discovered by a search of appellee's car, and that there was no valuable personal property in plain view. Taking all of these circumstances into consideration the lower court correctly concluded that the search of appellee's automobile was an investigatory search and not a search incident to the police's caretaking function. Moreover, the instant case is easily distinguished from those cases cited by the Opinion in Support of Reversal. In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the inventoried automobile was in police custody as a result of repeated parking violations. The *Opperman* Court concluded:

"The Vermillion police were indisputably engaged in a caretaking search of a lawfully impounded automobile. . . . The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was

prompted by the presence in plain view of a number of valuables inside the car. . . . (T)here is no suggestion whatever that this standard procedure . . . was a pretext concealing an investigatory police motive." 428 U.S. at 375, 96 S.Ct. at 3099.

In *Brandt,* supra, the inventoried automobile was lawfully in police custody and we noted that "appellee was incapable of either maintaining custody of his vehicle or supervising its removal from the scene" because appellee had been transported to a hospital. 244 Pa.Super. at 158, 366 A.2d at 1240, n. 1. It must also be noted that in *Brandt,* contrary to what the lower court found in the instant case, there was no indication that the police's intrusion was coupled with an intent of discovering evidence of a crime.

The Opinion in Support of Reversal also cites *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976) in support of its finding in the case at bar. In *Scott,* our Supreme Court noted that:

"(T)here was expensive stereo equipment in plain view to the public in the car and . . . it was parked in a high crime area. . . ." 469 Pa. at 267, 365 A.2d at 144, n. 7.

Thus, in all of these cases, not only was an inventory standard police procedure, but there were also additional facts and circumstances which could lead a court to conclude that the search was an inventory rather than an investigative search.*

We find no error in the conclusion of the lower court. Upon careful consideration we find that the search in the case at bar was "coupled with the intent of discovering evidence of a crime," and thus not an inventory within the *Brandt* analysis. 244 Pa.Super. at 160, 366 A.2d at 1241. To

---

* It is also appropriate to note that our holding in *Brandt* was not that the search in *Brandt* was an inventory. Rather, our holding was that a warrantless automobile search is not *per se* a violation of the Fourth Amendment. We remanded *Brandt* so that the lower court could make a determination as to whether the search was a subterfuge for criminal investigation or a routine inventory pursuant to police caretaking functions.

conclude otherwise would be to allow police examination of all the contents of every automobile which is lawfully in their custody, under the pretext that they are conducting an inventory. As Justice Powell noted in his concurring opinion in *Opperman*, "Upholding searches of this type provides no general license for police to examine all contents of such automobile."

We would, therefore, affirm the order of the lower court.

HOFFMAN and SPAETH, JJ., join in this opinion.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

## IN SUPPORT OF REVERSAL

PRICE, Judge:

This is an appeal by the Commonwealth from a suppression order entered by the court below.[1] The Commonwealth argues that the lower court erred in ruling that an inventory search conducted by several police officers of an in-custody vehicle was an illegal search, necessitating the suppression of seized items. We agree, would reverse the suppression order and remand the case for trial.

On November 11, 1975, Patrolman Frank R. Caldwell of the Mt. Lebanon Township Police Department received a radio dispatch concerning an attempt to pass a stolen check at an area bank. The broadcast described the suspect as a "negro, female, wearing afro-style hair with a light colored cap [and] dark pantsuit." The suspect was seen entering a maroon convertible with a white top which travelled south from in front of the bank. A subsequent radio broadcast revealed that there were three occupants in the car. Caldwell observed a car answering the radio description, and with two back-up officers he stopped the vehicle. One of the passengers was wearing a dark pantsuit. At her feet

1. The Commonwealth's appeal from this pretrial order is appropriate. The issue presented is one of law and the Commonwealth is substantially handicapped by the order. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

were an afro-style wig and a light colored cap. The occupants were placed under arrest and immediately taken to the police station. At the scene, Caldwell seized the wig, the cap and a driver's license, all in plain view. Appellee's vehicle was towed to the police station, where an inventory was conducted. A box containing a 12 gauge sawed-off shotgun and many unendorsed and blank checks were found in the trunk.

In his motion for suppression, appellee contended that the intrusion into his vehicle was an unlawful search, violative of his fourth amendment rights, and that the seized items were therefore inadmissible against him. The suppression judge agreed with this assertion and granted the suppression request.

A suppression court must make findings of fact and conclusions of law in determining whether evidence was obtained in violation of a defendant's rights. Pa.R.Crim.P. 323(i). The Commonwealth must satisfy the suppression court of the admissibility of the evidence by a preponderance of the evidence. Pa.R.Crim.P. 323(h). The appellate court must "determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975).

The fourth amendment provides:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly, describing the place to be searched, and the persons or things to be seized."

In deciding whether fourth amendment dictates have been abridged, one must consider all of the circumstances of the official intrusion, recalling that the ultimate goal of the amendment is not the protection of preferred locales, but the protection of people and their legitimate privacy expectations. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19

L.Ed.2d 576 (1967). In a series of cases, the United States Supreme Court has found automobile searches to be subject to the constitutional standard of reasonableness. Concurrently, the Court has acknowledged fundamental differences between vehicles and other property that permit warrantless searches of automobiles in circumstances in which warrantless searches of other property would not be reasonable. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (U.S. June 21, 1977); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In the instant case, the Commonwealth does not attempt to justify the warrantless intrusion into appellee's automobile as a search incident to arrest, *Commonwealth v. Smith*, 452 Pa. 1, 304 A.2d 456 (1973), or as one required by exigent circumstances. *See United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The Commonwealth's only claim is that the intrusion was not of an investigative but rather an inventory nature, as approved in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

*Opperman* involved a police inventory of an automobile impounded after being discovered illegally parked. A police officer observed a watch on the dashboard, which prompted him to unlock the door and fully inventory the car, including the glove compartment. Pursuant to standard police procedures, the officer completed an inventory form. Items found, including marijuana, were taken to police headquarters for safekeeping. The defendant, charged with possession of marijuana, moved to suppress the contraband. The decision of the Supreme Court of South Dakota, that the defendant's fourth amendment rights were thus violated, was reversed by the Supreme Court.

The Court first observed that:

"One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its

occupants and its contents are in plain view." *South Dakota v. Opperman, supra,* at 368, 96 S.Ct. at 3096, *quoting Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

The court recognized that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369, 96 S.Ct. at 3096. The majority noted further that local police departments usually follow a routine procedure of inventorying impounded automobiles' contents in furtherance of three goals: (1) protecting the owner's property while in custody, (2) protecting the police against theft claims, and (3) protecting the police from potential dangers. The Court approved such caretaking procedures and noted that in *Opperman* the inventory was conducted only after the car was impounded for multiple parking violations. The inventory was justified because valuables were observed in plain view and the defendant was not present to protect them himself.

In *Commonwealth v. Brandt,* 244 Pa.Super. 154, 366 A.2d 1238 (1976), we relied upon *Opperman* and held that, absent probable cause, a warrantless automobile search is reasonable by fourth amendment standards if the Commonwealth establishes two things. First, the Commonwealth must show that the vehicle was lawfully in police custody. Second, "the Commonwealth must show that the search was in fact an inventory search pursuant to the objectives laid down in *Opperman* . . . ." *Id.,* 244 Pa.Super. at 162, 366 A.2d at 1242. We specified that:

> The hearing judge must be convinced that the police intrusion into the automobile was for the purpose of taking an inventory of the car and not for the purpose of gathering incriminating evidence. Those facts and circumstances which the hearing judge must consider include the scope of the search, the procedure utilized in the search, whether any items of value were in plain view, . . . the reasons for and nature of the custody, . . . the anticipated length of the custody, and any other facts

which the court deems important in its determination."
*Id.,* 244 Pa.Super. at 162, 366 A.2d at 1242.

In this case, the suppression judge fully analyzed the *Opperman* and *Brandt* dictates. The findings of the suppression court in such a case are, of course, subject to appellate review, which entails consideration of "whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Goodwin, supra,* 460 Pa. at 522, 333 A.2d at 895. We find the suppression judge's ultimate conclusion unfounded. First, the court below did find that the police had probable cause to arrest the occupants of the car. The subsequent removal of the car from a major thoroughfare was clearly justified; police custody of the vehicle was therefore lawful. The second part of the *Brandt* analysis deals with consideration of the surrounding circumstances to determine if in fact the intrusion was an inventory conducted pursuant to *Opperman* standards. The court below first noted that the intrusion occurred within twenty-five minutes of appellee's arrest. This does not discredit the Commonwealth's assertion that the vehicle was being inventoried to preclude future theft claims. It would be most sensible for an inventory to be conducted as soon as possible after the vehicle is taken into custody rather than to abandon it for a time, leaving it vulnerable to theft. The court also noted that in *Opperman* there was no real reason for the police to suspect that criminal contraband would be uncovered because the car was merely illegally parked. The court below contrasted the instant case, wherein arrests of the car's occupants were made for attempting to pass a bad check. The court concluded that the arrests could lead police to suspect that contraband might be found in the car. Such conjecture that the police may have suspected the presence of criminal contraband does not refute the Commonwealth's assertion that the intrusion was merely to inventory the automobile, which Officer Caldwell testified was a standard department procedure.

Although the search in *Opperman*, as noted below, was only of the passenger compartment and unlocked glove compartment, we do not find the broader scope of the instant inventory to be unreasonable. The *Opperman* Court said in reference to the inventory's scope:

"The inventory was not unreasonable in scope. Respondent's motion to suppress in state court challenged the inventory only as to items inside the car not in plain view. But once the policeman was lawfully inside the car to secure the personal property in plain view, it was not unreasonable to open the unlocked glove compartment, to which vandals would have had ready and unobstructed access once inside the car." *South Dakota v. Opperman, supra* at 376 n. 10, 96 S.Ct. at 3100.

Appellee contends that unlocking the glove compartment and trunk rendered the scope of the inventory herein unconstitutional. If we accept as justification for such inventories the interest of the police in avoiding theft claims[2] and in protecting personal property of the owner, which we have done in accord with *Opperman*, then it follows that the inventory should be permitted to extend to each of the automobile's compartments. Strengthening that position, we would point out that the Pennsylvania Supreme Court had not interpreted *Opperman* narrowly. In *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976), the court upheld a lower court's decision denying suppression of evidence obtained in an automobile inventory subsequent to the appellant's arrest. The inventory there, as here, was standard police procedure for impounded cars. The court approved the seizure of items discovered under the front seat of the car, in the glove compartment and in a suitcase in the rear of the car. One typically places valuables in an automobile in the glove compartment or trunk. Items are rendered somewhat safer there than if flung casually in the passenger

2. The lower court in its opinion stated: "We also note that the argument that inventory searches are required to protect the police from theft charges is questionable." Such a position totally disregards the United States Supreme Court's holding in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

compartment. However, while concealing valuables means they will not entice the average passerby, locking them in a glove compartment or trunk does not render them inaccessible. Therefore, if the police wish to protect themselves and the vehicle owner fully from the possibilities of theft, an inventory of those two areas is clearly reasonable.

The court below observed that the appellee was not present at the time of the inventory. His absence does not refute the inventory nature of the police intrusion. The fact that a car owner is not present to safeguard his own belongings increases the need for a protective inventory by police officials. In this regard, we would note finally that two other officers were present and observed the inventory conducted by Officer Caldwell. Such a measure adds credibility to the inventory form as completed, and could controvert any possible claims that the officer himself removed items and failed to account for them on the inventory form.

After reviewing the suppression court's findings, inferences and legal conclusions, we find that the court erred in suppressing evidence derived from a legitimate automobile inventory. Accordingly, we would reverse the order of the suppression court and remand the case for trial.

JACOBS, President Judge, and VAN der VOORT, J., join in this opinion.