462 A.2d 270

COMMONWEALTH of Pennsylvania

v.

Mark CASSIDY, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 4, 1983.

Filed July 1, 1983.

430

Frank H. Morgan, Jr., Ardmore, for appellant.

Joseph A. Smyth, District Attorney, Norristown, submitted a brief on behalf of Commonwealth, appellee.

Before WIEAND, McEWEN and MONTGOMERY, JJ.

WIEAND, Judge:

Mark Cassidy was tried by jury and convicted of third degree murder, recklessly endangering another person and criminal conspiracy in connection with the shooting death of Vincent Esposito. His post verdict motions were denied, and concurrent terms of imprisonment were imposed for third degree murder and conspiracy.[1] In this direct appeal from the judgment of sentence, Cassidy contends: (1) that the evidence was insufficient to sustain the convictions; (2)

---

1. The recklessly endangering conviction was held to merge in the murder conviction for sentencing purposes.

that his confession was involuntary and should have been suppressed; (3) that the trial court erred in permitting bullets, properly received in evidence, to be taken into the jury deliberation room; and (4) that alleged hearsay testimony was improperly received. There is no merit in any of these contentions. The opinion of the learned trial judge, The Honorable Anthony J. Scirica, has ably and carefully analyzed the first three of appellant's claims, and there is no need to add thereto or repeat his analysis here. Our discussion, therefore, is confined to appellant's contention that extrajudicial statements were improperly received in evidence.

■ Appellant contends specifically that the trial court erred in allowing Commonwealth witnesses to testify about a conversation which took place on the afternoon of the shooting. The conversation, to which appellant, his co-conspirators and the witnesses were privy, centered upon the fact that the victim had been harassing one of the co-conspirators. The witnesses testified that during the course of the conversation, the alleged conspirators had spoken of taking retaliatory action against the victim.[2] This, appel-

---

**2.** Michael Joseph Curry, who was present, testified as follows:

Q. Mr. Curry, who was present during this conversation about Vinnie Esposito?

A. Myself, Mark Cassidy, Billy Fields and Chuck Fields.

. . . .

Q. Mr. Curry, who became involved in the conversation about Vincent Esposito?

A. We all were.

Q. What were you talking about, about Mr. Esposito?

A. About how he was harassing Billy so much and slicing up his tires and—

THE COURT: Keep your voice up.

A. (continuing) Somebody mentioned about breaking his legs and his arms, but nothing was said about killing him or anything there.

Q. Did Mark Cassidy ever say anything to Billy Fields about Esposito?

A. Billy came along and said that he wished somebody would take care of him, and Mark volunteered.

Q. Can you explain how that took place, what was done?

A. Well, Billy—we were all talking about it and Billy said, "I wish somebody would take care of him." Mark volunteered himself.

Q. What did he say?

lant argues, took place prior to the commencement of the alleged conspiracy and, therefore, constituted inadmissible

A. That he would do it for him, he would take care of him for him. N.T. pp. 161, 163, 164.

Barry Fields testified as follows:

Q. Mr. Fields, when the subject of Vincent Esposito was brought up, who was present?

A. William Fields, Mark Cassidy, Mike Curry, Charles Fields and myself.

Q. Were any other members of your family present?

A. My kids were in the yard, but they didn't hear anything.

Q. Where did the conversation take place? Where were these individuals, physically?

A. We were sitting at the picnic table in my yard, on the right side.

Q. Did you remain present during the whole time that these individuals were seated together?

A. No.

Q. What were you doing?

A. I was in and out of the house, after a couple of beers, or the phone rang a couple of times.

Q. While you were in the company of those four individuals, was the name Vincent Esposito brought up?

A. Yes.

Q. Who brought up the name?

A. William Fields?

Q. Now, how was the name Vincent Esposito brought up by your brother, William?

A. He said that the guy had cut up—

MR. MORGAN: Objection.

THE COURT: The objection is overruled.

BY MR. RYAN:

Q. Go ahead, please.

A. He said that the guy had cut up some more of his tires the night before.

THE COURT: Excuse me, by "the guy"—

THE WITNESS: Vincent Esposito had cut his tires.

BY MR. RYAN:

Q. Did anyone else become involved in this conversation about Vincent Esposito?

A. Yeah. I said to my brother Billy, I said, "Why don't you just break the guy's legs," because this had gone on for, I don't know, six months, eight months. I really got tired of hearing it. Because, you know, Carol came to the house, to my house with Billy, and she would call her husband [Vincent Esposito], set up meetings to meet him, and she would take Billy. They were constantly fighting each other.

Q. This particular day, did the other three individuals who were present, take part in this conversation concerning Vincent Esposito?

A. Yes. Charles said, "Why don't you break his arms, too?"

Q. Who was present when this took place?

A. The five of us.

N.T. pp. 117–119.

hearsay. The trial court agreed that the evidence was hearsay but held it admissible under the exception to the hearsay rule which permits statements by one co-conspirator during the continuation of a conspiracy. Although we are unable to agree with the trial court's reasons for receiving this evidence, it seems clear that the evidence was admissible. This Court will affirm the trial court's decision if the result is correct on any ground, without regard to the grounds on which the trial court relied. *Commonwealth v. Shaw*, 494 Pa. 364, 368 n. 1, 431 A.2d 897, 899 n. 1 (1981); *Commonwealth v. Reidenbaugh*, 282 Pa.Super. 300, 309–310, 422 A.2d 1126, 1131 (1980); *Commonwealth v. Hinton*, 269 Pa.Super. 43, 48–49, 409 A.2d 54, 57 (1979).

■ Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Darden*, 311 Pa.Super. 170, 175, 457 A.2d 549, 551 (1983); *Commonwealth v. Perry*, 279 Pa.Super. 32, 37–38, 420 A.2d 729, 732 (1980); *Commonwealth v. Rhodes*, 272 Pa.Super. 546, 554, 416 A.2d 1031, 1035 (1979); *Commonwealth v. Strunk*, 256 Pa.Super. 213, 215, 389 A.2d 1089, 1090 (1978). When an extrajudicial statement is offered for a purpose apart from proving the truth of its contents, it is not hearsay and is not excluded under the hearsay rule. *Commonwealth v. Darden, supra.* See: *Commonwealth v. Cruz*, 489 Pa. 559, 565, 414 A.2d 1032, 1035 (1980) (out-of-court statement offered to explain course of conduct is not hearsay); *Commonwealth v. Perry, supra* 279 Pa.Super. at 38–39, 420 A.2d at 732.

■ In the instant case, the out-of-court statements were not hearsay. They were not offered by the Commonwealth to prove the truth of the matters asserted, but rather as circumstantial evidence of the formation and existence of a conspiracy. "[O]ut-of-court statements of conspirators are often admitted as circumstantial evidence of their participation in a conspiracy." Binder, The Hearsay Handbook § 5.2 (1982 Supplement). See also: *United States v. Bobo*, 586 F.2d 355, 371–372 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979). The statements presented by the Commonwealth in this case demonstrated

the circumstances under which the participants in the shooting came together and formed a conspiracy or unlawful confederation. "It was competent for the Commonwealth to show how the various defendants became associated, and it was proper to show the background of the arrangement which resulted in this prosecution." *Commonwealth v. Berman*, 119 Pa.Super. 315, 325–326, 181 A. 244, 248 (1935). See also: *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

Because testimony of the inculpatory conversation between the alleged conspirators was offered not for the truth of the matters asserted but to establish the formation of a conspiracy, it was properly received.

The judgment of sentence is affirmed.