COMMONWEALTH of Pennsylvania,
Appellee

v.

Francis Patrick LAGENELLA,
Jr., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 7, 2010.

Filed April 5, 2011.

Damian J. DeStefano, Public Defender, Harrisburg, for appellant.

Christopher J. Schmidt, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: STEVENS, SHOGAN, and MUNDY, JJ.

OPINION by STEVENS, J.:

Appellant Francis Patrick Lagenella, Jr., (hereinafter "Appellant"), appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County on January 11, 2010, at which time he was sentenced to an aggregate term of three (3) years to ten (10) years in prison after he was convicted of Theft by receiving stolen property[1] and two counts of Persons not to possess, use, manufacture, control, sell or transfer firearms[2] following a stipulated waiver trial.[3] Upon a review of the record, we affirm.

The trial court set forth the following summary of the facts revealed at the suppression hearing on September 22, 2009:

At approximately 1:42 a.m. on December 31, 2008, Corporal Terry Wealand of the Harrisburg Bureau of Police initiated a traffic stop of a Black Ford Mustang in the 500 block of Woodbine Street in Harrisburg. [N.T., 9–22–09, pp. 2–5].[3] Corporal Wealand requested and received from [Appellant] his driver's license, registration, and insurance documents. [N.T., 9–22–09, pp. 5–6]. Corporal Wealand noted that [Appellant]'s vehicle did not have the required emission inspection sticker and, upon investigating the status of [Appellant's] license, it was discovered that [Appellant's] license was under suspension. [N.T., 9–22–09, pp. 6–7].

Corporal Wealand issued two citations to [Appellant] and told him he was free to leave. [N.T., 9–22–09, p. 8]. Corporal Wealand also told [Appellant] that he was going to have the car towed due to [Appellant's] licensing status, and that the Harrisburg Bureau of police mandates an inventory of a vehicle that is to

---

1. 18 Pa.C.S.A. 3925(a).

2. 18 Pa.C.S.A. § 6105(a)(1).

3. Solely for the purpose of the stipulated waiver trial, Appellant stipulated that the victim reported a theft of a .22 caliber Winchester hunting rifle from his truck on November 28, 2006. The rifle had great sentimental value to the victim and a monetary value of over $200.00. Corporal Terry Wealand retrieved the rifle from Appellant's trunk on December 28, 2008, which was on top of Appellant's shotgun. When asked about the rifle, Appellant stated he did not know how a stolen rifle had gotten in his car, though Corporal Wealand would have testified he had not informed Appellant he had queried the computer and discovered the rifle had been stolen prior to Appellant's making the statement. Appellant stated he had had the shotgun for most of his life. The Commonwealth also would have presented testimony from a ballistics expert who would have explained that an automatic check is performed prior to one's purchasing a rifle from a legitimate source; thus, Appellant could not have obtained the rifle legitimately from a retail establishment. N.T., 1/11/10, at 22–23.

be impounded and towed. [N.T., 9–22–09, pp. 8–10]. Pursuant to this policy, any personal property within the vehicle valued at more than $5.00 must be listed on the computerized form. Accordingly, Corporal Wealand conducted an inventory of the vehicle, including the trunk. [N.T., 9–22–09, pp. 9–10].

During the inventory, [Appellant] asked it he could stay and watch. Corporal Wealand told him he was free to stay but did not have to stay. [N.T., 9–22–09, p. 9]. During the inventory of the trunk, Corporal Wealand observed a shotgun and a rifle in plain view. [N.T., 9–22–09, p. 13] Based upon a computer check, Corporal Wealand was aware that [Appellant] was a convicted felon who was barred from possessing firearms. [N.T., 9–22–09, p. 14]. [Appellant] was arrested and taken into custody.

---

[3] The basis for the stop was Cpl. Wealand's observation that [Appellant] entered the flow of traffic from the curb without using a turn signal (in violation of 75 Pa.C.S. § 3334(b)). [N.T., 9–22–09, pp. 4–5].

Trial Court Opinion filed April 19, 2010, at 3–4.

On February 5, 2010, Appellant filed a timely notice of appeal. In an Order entered on February 18, 2010, the trial court directed Appellant to file a statement of matters complained on Appeal; Appellant filed the same on March 10, 2010, wherein he averred the following:

1. The denial of [Appellant's] Motion to Dismiss Reinstituted Charges and Writ of Habeas Corpus pertaining to the two (2) counts of Persons not to Possess Firearms was in error. 18 Pa.C.S.A. § 6105, Pa.R.Crim.P. 132, 544, 551.

2. This Honorable Court erred when it denied in part [Appellant's] Motion to Suppress Physical Evidence.

In his brief, Appellant raises the following issues for our review:

1. Did the trial court err when it failed to suppress physical evidence and Appellant's statements obtained during an inventory search of the vehicle?

2. Did the trial court err when it denied [Appellant's] Motion to Dismiss Reinstituted Charges and Writ of Habeas Corpus pertaining to the two (2) counts of Persons not to possess firearms, 18 Pa.C.S.A. § 6105?

Brief for Appellant at 4.

 Our Supreme Court set forth our standard of review when addressing a challenge to a trial court's denial of a suppression motion as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003). Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Id.* Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.*

*In re J.E.*, 594 Pa. 528, 535, 937 A.2d 421, 425 (2007).

 Appellant argues that when an individual is stopped on the highway for a summary offense, police lack statutory authority to impound his or her vehicle and police officers may not tow a vehicle simply because their agency has issued a written order authorizing them to do so. Appellant further asserts that 75 Pa.C.S.A.

§ 6309.2 [4] allows for a vehicle to be immobilized and to be towed only if there is an issue of public safety. In support of his contentions Appellant relies upon *Commonwealth v. Thurman*, 872 A.2d 838 (Pa.Super.2005), *appeal denied*, 585 Pa. 688, 887 A.2d 1241 (2005) [5] and argues the instant matter is distinguishable from *Commonwealth v. Henley*, 909 A.2d 352 (Pa.Super.2006) *(en banc) appeal denied* 592 Pa. 786, 927 A.2d 623 (2007).[6] Brief for Appellant at 15–20.

4. This statute entitled "Immobilization, towing and storage of vehicle for driving without operating privileges or registration" provides the following:

(a) **General rule.**—Subject to subsection (d), the following shall apply:

(1) If a person operates a motor vehicle or combination on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

....

(b) **Procedure upon immobilization.**—

(1) When a vehicle is immobilized pursuant to subsection (a)(1), the operator of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:

(i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and

(ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 (relating to judiciary and judicial procedure) and this title.

....

(3) If a certification of release is not obtained within 24 hours from the time the vehicle was immobilized, the vehicle shall be towed and stored by the appropriate towing and storage agent under subsection (c).

....

75 Pa.C.S.A. § 6309.2.

5. In *Thurman*, the appellant had been stopped for driving with an expired inspection sticker and a malfunctioning brake light. *Id.* at 839. During the traffic stop, the officer determined, through the PennDOT computer system, that the appellant's registration had been suspended due to insurance cancellation. Pursuant to a general order of the municipal police department, the officer impounded the vehicle, conducted an inventory search which uncovered baggies of drugs and had the vehicle towed. The trial court denied the appellant's motion to suppress, and he appealed after being found guilty of various drug offenses. This Court reversed, holding that absent adoption by local ordinance of 75 Pa. C.S.A. § 6309.2, police lacked authority to impound and tow the vehicle and therefore the inventory search was invalid. This Court further determined that 75 Pa.C.S.A. § 6309.2 was enabling legislation and that the failure to adopt the statute by local ordinance invalidated the police department General Order for impounding and towing a vehicle. This Court found that "towing a vehicle for failure to have proper registration in the Borough of Norristown can be accomplished only by ordinance and not by general order of the police department." *Id.* at 840–841.

6. In *Henley*, an officer stopped the appellant's vehicle after noticing the registration sticker on the license plate had expired. A panel of this Court specifically declined to adopt the *Thurman* analysis and its application of 75 Pa.C.S.A. § 6309.2 and stated the following: "to the extent that *Thurman* could be interpreted as opining that absent a local ordinance adopting Section 6309.2, the police have no authority to impound and tow an unregistered and uninsured vehicle pursuant to their care-taking function, it is disapproved. To the contrary, we think the opposite is true; *i.e.*, that the statute was not intended to trump the traditional community care-taking functions of the police. 'Judges are not in a position to second-guess a police officer's decision to tow a vehicle which, in the officer's opinion, may create a traffic hazard. To do so would seriously handicap legitimate traffic-control activities.'" *United States v. Abbott*, 584 F.Supp. 442, 448 (W.D.Pa.1984) *affirmed* 749 F.2d 28 (3rd Cir.(Pa.) 1984). *Henley*, 909 A.2d at 364 (footnote omitted).

Appellant also maintains there were no exigent circumstances which would provide for a warrantless search of his vehicle and that Corporeal Wealand searched the trunk to uncover additional criminal evidence after finding suspected contraband in Appellant's eyeglass case which he did not voluntarily consent to have opened. Brief at 25–27. Appellant concludes that:

> ... Corporal Terry Wealand conducted an improper warrantless search of Appellant's vehicle. The Appellant's vehicle should not have been towed because it was not towed pursuant to the care-taking functions of law enforcement. Further, Corporal Wealand conducted an improper inventory search because it was not pursuant to reasonable, written police procedures. Also, there were alternatives to securing Appellant's personal items other than by taking an inventory of the vehicle's contents. Corporal Wealand conducted an unlawful warrantless search of the trunk of Appellant's vehicle pursuant to a criminal investigation. Moreover, consent to search the eyeglass case found in the jacket was not given voluntarily. Finally, the plain feel doctrine does not justify the seizure and subsequent search of the eyeglass case. Therefore, said search and seizure of Appellant's vehicle was illegal, and thereby constitutes a violation of the right to be free from illegal search and seizure under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution....

Brief for Appellant at 30–31.

Recently, when considering claims which parallel the arguments Appellant has set forth herein concerning whether a proper inventory search of an automobile had occurred, a panel of this Court reasoned as follows:

> [T]he first inquiry is whether the police have lawfully impounded the automobile, *i.e.*, have lawful custody of the automobile.... The second inquiry is whether the police have conducted a reasonable inventory search. *Henley*, 909 A.2d at 359 (citations omitted). Regarding the first requirement, in *Henley* this Court noted "[t]he authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety." *Id.* (citations omitted). The police's authority to take custody of a vehicle, however, also derives from section 6309.2, [FN5] which in relevant part provides as follows:

FN5. *See Henley*, 909 A.2d at 364 (holding that section 6309.2 coexists with "the traditional community care-taking functions of the police.")

\* \* \*

Therefore, pursuant to section 6309.2(a)(1), an officer who stops a vehicle operated by a person whose driving privilege is, *inter alia*, suspended, is faced with two options: immobilize the vehicle in place or, if it poses public safety concerns, have it towed and stored at an impound lot. Once the vehicle is immobilized or impounded under section 6309.2, the vehicle is in the lawful custody of the police.

The relevant requirements for purposes of immobilization are: (i) the person operates a motor vehicle while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, and (ii) the vehicle does not pose public safety concerns. For

purposes of towing, the requirements are: (i) the person operates a motor vehicle while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department and (ii) the vehicle poses public safety concerns warranting its towing and storage at an impound lot.

Thompson argues the vehicle did not pose public safety concerns and therefore the vehicle could not be towed, but only immobilized. Thompson, in fact, argues the police had no authority to tow the vehicle but does not argue the police did not have sufficient grounds for immobilizing the vehicle.

We first note any discussion regarding whether the requirements for towing the vehicle have been met here is unnecessary because all agree the police searched the vehicle before being towed, *i.e.*, while immobilized.

Second, as also noted above, the inquiry for purposes of an inventory search is whether the vehicle was in the lawful custody of the police not whether the police lawfully towed the vehicle. A vehicle is in the lawful custody of the police as soon as the vehicle has been lawfully immobilized. Here, as noted, Thomson does not contend the vehicle was unlawfully immobilized. As such, we conclude the first prong of the inventory search test (*i.e.*, whether the police lawfully took custody of a vehicle) is met. [FN6] *See Henley*, 909 A.2d at 359.

FN6. Regardless of whether Thompson actually raised a challenge, the police lawfully immobilized the vehicle. The suppression court essentially found Thompson was the operator of the vehicle and his driving privilege was suspended while operating the vehicle....

Regarding the second requirement (*i.e.*, reasonableness of search) in *Henley* this Court noted "[a]n inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." *Henley*, 909 A.2d. at 359 (citation omitted).

Next, Thompson relies on *Commonwealth v. Thurman*, 872 A.2d 838, 840–42 (Pa.Super.2005) and *Henley*, 909 A.2d. at 362, for the proposition that 'following the procedures laid out [in section 6309.2] [it] is necessary to effect a legal towing and impoundment and concomitantly a legal inventory search pursuant thereto.' Appellant's Brief at 12. Thompson's reliance on *Thurman* and *Henley* is misplaced.

First, neither *Thurman* nor *Henley* applied section 6309.2, although both decisions contain ample discussions concerning that section. In *Thurman* a panel of our Court found section 6309.2 was inapplicable because the municipality (Borough of Norristown) did not adopt section 6309.2 by local ordinance. In *Henley* we held the authority of local governments to impound and tow vehicles may derive from Section 6309.2 as well from their community care taking function. In *Henley* we concluded the City of Pittsburgh, although it did not adopt by ordinance section 6309.2, had the authority to impound unregistered/uninsured vehicles pursuant to the Pittsburgh Police impoundment and inventory procedure.

Second, the validity of *Thurman* after *Henley* appears questionable. In *Henley*, this Court, sitting *en banc*, clearly disapproved *Thurman's* analysis of section 6309.2 and declined to apply it. *Henley*, 909 A.2d at 360, 362.

Finally, Thompson relying on *Commonwealth v. Germann*, 423 Pa.Super.

393, 621 A.2d 589 (1993), argues that since his vehicle did not pose public safety issues, there was no need for a full scale search of the vehicle. Specifically, Thompson argues this Court in *Germann* adopted the reasoning of *United States v. Abbott*, 584 F.Supp. 442 (W.D.Pa.1984), *aff'd*, 749 F.2d 28 (3d Cir.1984), which in relevant part provides as follows: Logically, since an inventory search is to protect the owner's property, the owner, whenever available, should be given the opportunity to determine how he wants his property secured. The Supreme Court has implicitly embraced this view: that it should be only in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner of the property may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment.... [I]t is only reasonable that the owner be allowed to choose whether or not he wishes his car impounded. *Abbott*, 584 F.Supp. at 448–49 (citing *United States v. Lawson*, 487 F.2d 468, 477 (8th Cir.1973)) (alteration in original).

However, this case is distinguishable from *Germann*. First, *Germann* involved the inventory search of a vehicle for which the requirements of 75 Pa. C.S.A. § 3352 (relating to removal of vehicle by or at direction of police) were not met. Here, we are dealing with a case of an inventory search of a vehicle lawfully immobilized under section 6309.2.

Second, Thompson, as opposed to appellant in *Germann*, was not "available to provide for the custody and removal of the vehicle," *Germann*, 621 A.2d at 594, because his operating privilege was suspended.

Third, in *Germann*, this Court emphasized the inquiry into the police's motive because "motive" is "the sole factor which distinguishes a criminal investigatory search from a noncriminal inventory search of an automobile." *Id.* at 595. In *Germann*, considering the facts and the circumstances surrounding the search, we concluded the search was motivated by an improper motive (was indeed an investigatory search and therefore not "excepted from the warrant requirement or probable cause."). *Id.* at 594. Here, as opposed to *Germann*, it is undisputed the police had proper motives for searching the vehicle. Appellant's Brief at 11 n. 2. The concerns raised in *Germann/Abbott* are simply not present here.

The above facts, on the other hand, sufficiently justify the inventory search of the vehicle in this case. As this Court noted in *Henley*, Inventory searches serve one or more of the following purposes: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned. *Henley*, 909 A.2d at 359 (citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)).

\* \* \*

*We hold, therefore, the concerns justifying an inventory search of a vehicle when the vehicle is towed and stored in an impound lot are equally present when the vehicle is immobilized in place. Thus, once the police have taken lawful custody of a vehicle under section 6309.2, whether the vehicle has been immobilized or towed is irrelevant for purposes of the inventory search analysis. Additionally, the procedures set forth for the release of*

*the vehicle upon immobilization have no bearing on the issue whether the police can conduct an inventory search of the vehicle.*[FN7]

FN7 ... As noted above, we do not need to address this issue for the vehicle here had been searched before being towed, *i.e.*, while immobilized. Once the police have taken lawful custody of a vehicle, the police may conduct an inventory search of the vehicle if concerns for an inventory search arise. *Henley,* 909 A.2d at 359 (citing *Opperman,* 428 U.S. at 369, 96 S.Ct. 3092). *See also* above discussion in connection with *Germann.* Although we do not fully agree with the lower court's analysis, this Court "will affirm the trial court's decision if the result is correct on any ground, without regard to the grounds on which the trial court relied." *Commonwealth v. Cassidy,* 315 Pa.Super. 429, 462 A.2d 270, 272 (1983).

*Commonwealth v. Thompson,* 999 A.2d 616, 619–623 (Pa.Super.2010) (emphasis added).

Applying the reasoning set forth in *Thompson* to the matter *sub judice,* we are compelled to reach the same result. First, Appellant does not dispute the initial stop of his vehicle which Corporal Wealand lawfully conducted when Appellant failed to use his turn signal before entering the flow of traffic. N.T., 9/22/09, at 4–5. As he approached the driver's side of the vehicle, Corporal Wealand observed the vehicle bore no emissions sticker. *Id.* at 5–6. While processing Appellant's information, Corporal Wealand also learned Appellant's driver's license had been under suspension. *Id.* at 6–7. Appellant was the sole occupant of the vehicle; as such, no one was present to legally operate it. Corporal Wealand completed two traffic citations, one for the driver's license and one for the inspection violation, and then properly immobilized Appellant's vehicle and informed Appellant it would need to be towed, as his operating privileges were under suspension. *Id.* at 8, *See also Thompson, supra;* 75 Pa.C.S.A. § 6309(a)(1); 75 Pa.C.S.A. § 6309.2.

We next consider whether Corporal Wealand's inventory search had been reasonable. In *Thompson,* this Court stated that the officer's motive in conducting the search distinguishes a criminal investigatory search from a noncriminal inventory of an automobile's contents. *Thompson, supra* at 621. Corporal Wealand testified a written policy of the Harrisburg Police Department requires officers to inventory valuables before having a vehicle towed and when conducting the inventory officers must complete a computer generated form that requires certain fields or the process cannot continue. The form is accessed from the police vehicles, which requires officers to check the body of the vehicle as well as its trunk and make note of any property valued at more than $5.00. N.T., 9/22/09, at 9–10, 17–18.

As it was below freezing and Appellant voluntary stood outside the car watching the inventory, Corporal Wealand offered him a jacket he saw in the back of the vehicle, and Appellant accepted. *Id.* at 9, 11–12. Informing Appellant he would need to check the jacket for weapons before handing it over, to which Appellant responded something along the lines of "Yeah, go ahead it that's what you got to do," Corporal Wealand patted the jacket to determine if any weapons were concealed therein at which time he felt hard object that Appellant indicated was an eyeglass case. *Id.* at 11–12. In response to Appellant's granting permission to open the case, Corporal Wealand did so and found marijuana seeds, plastic bags containing suspected cocaine residue and a box cutter. *Id.* at 12. At this point, Corporal Wealand placed Appellant into custody and continued his inventory of the vehicle, during

which he discovered the firearms in the trunk. *Id.* at 12.

In light of this testimony, we find Corporal Wealand followed required police procedure while conducting the inventory of Appellant's vehicle. The vehicle was in his lawful custody and he searched it pursuant to proper inventory procedures required by the Harrisburg Police Department to protect Appellant's property. In addition, though Appellant devotes several pages of argument in his brief in support of a claim the evidence in the eyeglass case had been illegally obtained, we find this analysis to be moot. In its Order of November 18, 2009, the trial court granted in part Appellant's Suppression Motion and found "evidence located in the eyeglass case is suppressed." As such, we need not determine whether Corporal Wealand's opening of the eyeglass case following Appellant's voluntary consent for him to do so was lawful.

█ Appellant next asserts he was prejudiced in two ways by the Commonwealth's reinstitution of the two counts of Persons not to possess firearms. First, he avers he suffered prejudice by having his preliminary hearing in front of then Dauphin County President Judge Richard A. Lewis. He also claims he was prejudiced by being continuously incarcerated in violation of his right to liberty on nominal bail pursuant to Pa.R.Crim.P. Rule 600(E). Appellant concludes that "[t]he two manners in which [ ] [Appellant] was prejudiced, individually and collectively, are such that the Commonwealth should be precluded from reinstituting the two (2) counts of persons not to possess firearms." Brief for Appellant at 33.

█ Upon our review of the record, we find Appellant waived these arguments. The Pennsylvania Rules of Appellate Procedure provide that issues not raised by an appellant in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A. 302(a). Moreover, Pa.R.A.P. 1925(b)(4)(vii) states that issues not included in the statement of errors complained of an appeal and/or not raised in accordance with the provisions of paragraph (b)(4) are waived. *See also Commonwealth v. Castillo,* 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) citing *Commonwealth v. Lord,* 553 Pa. 415, 420, 719 A.2d 306, 309 (Pa.1998) (finding "[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be waived."). In addition:

"When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Dowling,* 778 A.2d 683, 686 (Pa.Super.2001). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000). "In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Dowling,* 778 A.2d at 686.

*Commonwealth v. Seibert,* 799 A.2d 54, 62 (Pa.Super.2002).

As the Commonwealth notes in its brief, a request for a transfer of a case from one magisterial district justice to another is considered to be a change of venue in a criminal proceeding; pursuant to Pa.R.Crim.P. 134, objections to venue are deemed to have been waived where they are not raised in the court of common pleas of the judicial district in which the proceeding has been initiated, before completion of the preliminary hearing in a case, or before completion of the summary trial when a summary offense is charged. Commonwealth Brief at 18 *citing Commonwealth v. Shoop,* 420 Pa.Super. 606,

617 A.2d 351, n. 1 (1992) and Pa.R.Crim.P. 134(A).

Herein, Appellant neither lodged a timely and specific objection to President Judge Richard A. Lewis who presided over his second preliminary hearing, nor did he specifically raise this issue in his Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). Instead, counsel for Appellant objected at the June 17, 2001, hearing generally that "so for the preservation of appeal or for today, we ask that improper procedures were followed, in that at least the new docket, the re-arrest dockets, the two counts of persons not to possess should not be included in this preliminary hearing." N.T., 6/17/09, at 5. In fact, during the hearing, the Commonwealth objected to a question posed to Corporal Wealand regarding whether Appellant's vehicle had been blocking traffic when he stopped it; when overruling the objection, the trial court stated without objection from Appellant that: "[i]f you want me to sit as a committing magistrate, then we have to do what committing magistrates do, they give the defense a little leeway to develop the facts so I am going to do that." *Id.* at 27.

While Appellant, who was acting *pro se* at the time, seems to have verbally and inarticulately raised this issue at his stipulated waiver trial, such action was untimely. N.T., 1/11/10, at 8–10. Furthermore, even had Appellant properly preserved the issue at his second preliminary hearing, he failed to specifically make such a claim in his Statement of Errors Complained of on Appeal, and the trial court's failure to discuss it in its Memorandum Opinion suggests Appellant did not properly place the trial court on notice of his intention to pursue such an argument. As such, this claim is waived.

Appellant also posits he was further prejudiced by the reinstitution of the withdrawn firearms charges because he had been continuously incarcerated in violation of his right to liberty on nominal bail pursuant to Pa.R.Crim.P. 600(E). P.A. R.A.P. 1925(b)(4)(v) states that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal." In addition, P.A. R.A.P. 1925(b)(4)(vii) mandated that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."

Once again, Appellant failed to specifically raise a Rule 600 claim in his statement of errors complained of an appeal. Moreover, the trial court did not address the issue of the right to liberty on nominal bail pursuant to Rule 600 in its Opinion. As such, Appellant waived this claim as well.

█ To the extent Appellant argues generally that the trial court erred in allowing the Commonwealth to reinstitute the two counts of persons not to possess firearms, we will consider the issue and in doing so we rely upon the trial court's analysis:

[O]n August 21, 2009, [Appellant] filed a *pro se* Pre–Trial Motion to Dismiss the charges of two counts of persons not to possess firearms. Such charges had initially been withdrawn and the District Attorney thereafter reinstated such charges. This [c]ourt ordered a hearing on the matter, which was held on December 21, 2009. The testimony at the hearing revealed that on January 30, 2009, Deputy District Attorney John C. Baer appeared before Magisterial District Justice Jennings for the Commonwealth in a complaint filed in connection with [Appellant's] case. [Notes of Testimony, Hearing on Motion to Dismiss,

December 21, 2009, p. 4]. The charges of two counts of persons not to possess firearms were withdrawn by the Commonwealth on that date, pursuant to a decision made by attorney Baer.[1] [N.T., 12–21–09, p. 5]. Appellant waived his preliminary hearing. [N.T., 12–21–09, p. 14]. Subsequently, these charges were refilled/ reinstituted at the request of the District Attorney's Office; the necessary written approval was provided. [N.T., 12–21–09, p. 27–29]. Both the docket and the testimony reveal [Appellant] had a preliminary hearing on the reinstituted firearms charges (among other charges) before the Honorable Richard A. Lewis on June 17, 2009. [N.T., 12–21–09, pp. 43–44]. The same issues were raised before Judge Lewis and, as a remedy, Judge Lewis sat as "magistrate" and conducted a preliminary hearing on the charges in question.

"Our Supreme Court has long recognized the Commonwealth's ability to reinstitute criminal charges when the charges are dismissed at a preliminary hearing. [And] on October 8, 199, our Supreme Court even adopted Rule 544 of the Pennsylvania Rules of Criminal Procedure (formerly Rule 143) to clarify the procedure for refilling dismissed charges." *Commonwealth v. Bowman*, 840 A.2d 311, 315 (Pa.Super.2003) (quoting *Commonwealth v. Carbo*, 822 A.2d 60, 63–64 (Pa.Super.2003)). The rule states that:

> "when charges are dismissed or withdrawn at, or prior to a preliminary hearing, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the refiling of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges." Pa. R.Crim.P. 544(a). The authority of the attorney for the Commonwealth to reinstitute charges that have been dismissed at the preliminary hearing is

well established by case law. *See, e.g. Commonwealth v. Thorpe*, 549 Pa. 343, 701 A.2d 488 (1997). This authority, however, is not unlimited. First, the charges must be reinstituted prior to the expiration of the applicable statute(s) of limitations. Additionally, the decision .to reinstitute charges must be made by the attorney for the Commonwealth. *See Comment*, Pa.R.Crim.P. 544.

*Bowman, supra*, 840 A.2d at 315 (Pa.Super.2003) Moreover, the Commonwealth may not reinstitute the charges in an effort to harass the defendant or where the refilling [sic] would prejudice the defendant, *Comment*, Pa.R.Crim.P. 544, *Carbo, supra*, 822 A.2d at 64.

In the present case, none of these limitations apply. The record is clear that the statute of limitations had not expired, the decision to reinstitute the charges was made by the District Attorney's Office, the reinstitution of charges was not in any way meant to harass [Appellant], and nothing in the record indicates that [Appellant] was suffered [sic] any prejudice.[2] Accordingly, there is no merit to [Appellant's] assertion that this Court erred in denying his Motion to Dismiss Reinstituted Charges.

---

[1] Attorney Baer opted to withdraw the charges because he had misread the applicable statute and determined that he could not proceed under what was initially charged. [N.T., 12–21–09, pp. 5–10; 12].

[2] At the conclusion of the hearing on the Motion to Dismiss, this [c]ourt ruled: "We do not find the refilling was in bad faith. In fact, there is also a preliminary hearing held on those charges, which would have been the relief I would have suggested would be had in this case. I find no undue prejudice, and I find nothing improper." [N.T., 12–21–09, p. 45].

Trial Court Opinion, filed April 20, 2010, at 1–2. As such, we find Appellant is not entitled to relief on this claim.

Judgment of Sentence Affirmed.

SHOGAN, J. files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY SHOGAN, J.:

I agree with the learned majority that Appellant's challenge to the reinstituted charges is waived. However, I respectfully disagree that the warrantless search of Appellant's vehicle was a reasonable inventory search.

In determining whether a proper inventory search occurred, the first inquiry is whether the police had lawful custody of the vehicle.[1] The second inquiry is whether the police conducted a reasonable inventory search. *Commonwealth v. Thompson*, 999 A.2d 616, 619 (Pa.Super.2010) (citing *Commonwealth v. Henley*, 909 A.2d 352, 359 (Pa.Super.2006) (*en banc*)). We have explained that, "[o]nce the police have taken lawful custody of a vehicle, the police may conduct an inventory search of the vehicle if concerns for an inventory search arise." *Henley*, 909 A.2d at 359 (citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)).

"The reasonableness of the search turns on the facts and circumstances of the particular case." *Commonwealth v. Brandt*, 244 Pa.Super. 154, 366 A.2d 1238, 1242 (1976) (*en banc*). "[A]n inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." *Thompson*, 999 A.2d at 621 (citing *Henley*, 909 A.2d at 359). The purpose of an inventory search is to pro-

tect the contents of the vehicle for the benefit of the owner, not to uncover evidence. *Brandt*, 366 A.2d at 1241; *Commonwealth v. Burgwin*, 254 Pa.Super. 417, 386 A.2d 19, 20 (1978) (*en banc*); *Commonwealth v. Hennigan*, 753 A.2d 245, 254 (Pa.Super.2000). Once the police suspect contraband in the vehicle, they can no longer classify their search as one done for inventory purposes; they must obtain a search warrant. *Commonwealth v. Casanova*, 748 A.2d 207, 212 (Pa.Super.2000), *appeal denied*, 570 Pa. 682, 808 A.2d 569 (2002). "[I]t should be only in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle." *United States v. Abbott*, 584 F.Supp. 442, 448 (W.D.Pa.1984), *affirmed*, 749 F.2d 28 (3d Cir.1984).

Here, Corporal Wealand conducted a search of Appellant's vehicle where concerns for an inventory search did not arise. *Henley*, 909 A.2d at 359. According to Corporal Wealand, he searched Appellant's vehicle because it was going to be towed, and he based his decision to tow the vehicle on the Motor Vehicle Code and police procedure. The former provides that the police are authorized to tow a vehicle if there is a public safety concern. 75 Pa. C.S.A. § 6309.2(a)(1). Yet, Corporal Wealand confirmed there was no public safety concern: Appellant's vehicle was moveable, it was not obstructing traffic, Appellant could have called a friend to remove the vehicle, and there was nothing of value visibly within the vehicle that needed to be safeguarded. *Id.* at 15–16. Also, the Commonwealth presented no evidence that the inventory search took place pursuant to Harrisburg Police Department's standard procedures. N.T., 9/22/09, at 3–15.

1. Whether the police had lawful custody of the vehicle is not at issue in this case. Because Appellant's operating privilege was suspended, he could not drive the vehicle. 75 Pa.C.S.A. § 6309.2(a)(1).

Thus, the record does not support Corporal Wealand's decision to search and tow the vehicle based on his care-taking function. *Hennigan*, 753 A.2d at 260.

Furthermore, even assuming Corporal Wealand's initial motive was to inventory the vehicle before towing, the motive became investigatory upon his discovery of marijuana seeds in Appellant's eyeglass case.[2] Evidence found after that point— *i.e.*, weapons in the truck—should have been suppressed unless recovered pursuant to a search warrant. *Burgwin*, 386 A.2d at 21–22; *Casanova*, 748 A.2d at 212.

Paraphrased, the analysis in *Burgwin* fairly summarizes my position:

> The circumstances revealed ... that there was a search of a locked trunk, that [Appellant] ... [was] in custody and [was] not asked about disposition of the automobile, nor [was he] asked whether an inventory was necessary, that the police had indicia sufficient for them to believe that incriminating evidence may well be discovered by a search of [Appellant's] car, and that there was no valuable personal property in plain view. Taking all of these circumstances into consideration ... the search of [Appellant's] automobile was an investigatory search and not a search incident to the police's caretaking function.

*Burgwin*, 386 A.2d at 21.

Based on this record, I would have reversed the suppression court's order. Accordingly, I dissent.